# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                           )

SHAWN MUSGRAVE,          )
                           )
          Plaintiff,     )
                           )   Civil Action No. 1:21-cv-02198-BAH
          v.          )
                           )
MARK WARNER and      )
U.S. SENATE SELECT COMMITTEE   )
ON INTELLIGENCE,       )
                           )
          Defendants.   )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel), (202) 224-3391 (fax)

Attorneys for Defendants

**TABLE OF CONTENTS**

INDEX OF EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Responsibilities of the Senate Select Committee on Intelligence . . . . . . . . . . . . . 3

      B.    SSCI's Study of the Central Intelligence Agency's Detention and
          Interrogation Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      C.    FOIA Litigation in this Circuit Over the SSCI Report . . . . . . . . . . . . . . . . . . . . . 6

      D.    Plaintiff's Request for the SSCI Report and Filing of this Lawsuit . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.     THE SPEECH OR DEBATE CLAUSE BARS PLAINTIFF'S SUIT TO
      COMPEL SSCI AND ITS CHAIRMAN TO PRODUCE THE SSCI REPORT . . . . . . . 8

II.    SENATE DEFENDANTS ARE PROTECTED FROM PLAINTIFF'S SUIT
      BY SOVEREIGN IMMUNITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE COMMON LAW
      RIGHT OF ACCESS TO GOVERNMENT RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . 19

      A.    The Common Law Right of Access to Public Records Does Not
          Apply to Documents of a House of Congress . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      B.    The SSCI Report Is Not Subject to Compelled Disclosure
          Under the Common Law Right of Access to Public Records . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## INDEX OF EXHIBITS

Exhibit A     S. Res. 400, 94th Cong., 2d Sess. (1976), as amended

Exhibit B     Excerpt from *Report of the Comm. on the Judiciary of the House of Representatives Identifying Court Proceedings and Actions of Vital Interest to Congress*, No. 5, 97th Cong., at 94 (Comm. Print 1980) (H. Print No. 97-5)

Exhibit C     Excerpt from *Report of the House Select Comm. on Congressional Operations and the Senate Comm. on Rules and Admin. on Court Proceedings and Actions of Vital Interest to Congress,* Part 6, 95th Cong., at 275-83 (Comm. Print 1978)

# TABLE OF AUTHORITIES

## Cases

*ACLU v. CIA*, 823 F.3d 655 (D.C. Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 22, 27

*Ass'n of American Physicians and Surgeons v. Schiff*,
518 F. Supp. 3d 505 (D.D.C. 2021), *appeal docketed*,
No. 21-5080 (D.C. Cir. Apr. 7, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Am. Road and Transp. Builders Ass'n v. EPA*,
865 F. Supp. 2d 72 (D.D.C. 2012), *aff'd*, No.12-5244,
2013 WL 599474 (D.C. Cir. Jan. 28, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Buaiz v. United States*, 471 F. Supp. 2d 129 (D.D.C. 2007). . . . . . . . . . . . . . . . . . . . . . 14, 16

*Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408
(D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 12

*Chamber of Commerce v. Reich*, 74 F. 3d 1322 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . 17, 18

*Center for National Security Studies v. U.S. Dep't of Justice*,
33 F.3d 918 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*CIA v. Sims*, 471 U.S. 159 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Coggeshall Development Corp.v. Diamond*, 884 F.2d 1 (1st Cir. 1989) . . . . . . . . . . . . . . . 14

*Cox v. Dep't of Justice*, 504 F. Supp. 3d 119 (E.D.N.Y. 2020) . . . . . . . . . . . . . . . . . . . . . 6, 7

*Dep't of the Army v. Federal Labor Rel. Auth.*, 56 F.3d 273 (D.C. Cir. 1995) . . . . . . . . . . . . . 15

*Dep't of the Navy v. Egan*, 484 U.S. 518 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Doe v. McMillan*, 412 U.S. 306 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Dhiab v. Trump*, 852 F.3d 1087 (D.D.C. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 26, 27, 28

*Dugan v. Rank*, 372 U.S. 609 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975) . . . . . . . . . . . . . . . . 2, 8, 9, 10, 12, 13

iii

*Exxon Corp. v. FTC*, 589 F.2d 582 (D.C. Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*FDIC v. Meyer*, 510 U.S. 471 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gravel v. United States*, 408 U.S. 606 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Goland v. CIA*, 607 F.2d 33 (D.C. Cir. 1978), *vacated in part on
     other grounds*, 607 F.2d 367 (D.C. Cir. 1979) (per curiam). . . . . . . . . . . . . . . . . . 2, 6, 22

*Helstoski v. Meanor*, 442 U.S. 500 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Holt v. Davidson*, 441 F. Supp. 2d 92 (D.D.C. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Holy Spirit Ass'n for the Unification of World Christianity v. CIA*,
     636 F.2d 838 (D.C. Cir. 1980), *vacated in part on other
     grounds*, 455 U.S. 997 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Howard v. Office of Chief Administrative Officer of U.S. House of
     Representatives*, 720 F.3d 939 (D.C. Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Howard v. U.S. District Court for D.C.*, No. 10-1114,
     2010 WL 2639960  (D.D.C. June 30, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hubbard v. Administrator, EPA*, 982 F.2d 531 (D.C. Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . 15

*Hutchinson v. Proxmire*, 443 U.S. 111 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Motions of Dow Jones & Co.*, 142 F.3d 496 (D.C. Cir. 1998). . . . . . . . . . . . . . . . 24, 25, 26

*In re Shepard*, 800 F. Supp. 2d 37 (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Judicial Watch, Inc. v. Schiff*, 998 F.3d 989 (D.C. Cir. 2021) . . . . . . . 2, 7, 8, 9, 10, 11, 12, 16, 21

*Judicial Watch, Inc. v. Schiff*, 474 F. Supp. 2d 305 (D.D.C. 2020) . . . . . . . . . . . . . . . . . . . 16, 21

*Keener v. Congress*, 67 F.2d 952 (5th Cir. 1972) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kentucky v. Graham*, 473 U.S. 159 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kilbourn v. Thompson*, 103 U.S. 168 (1881) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lane v. Pena*, 518 U.S. 187 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682 (1949) . . . . . . . . . 16, 17, 18, 19

*Liberation News Service v. Eastland*, 426 F.2d 1379 (2d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . 15

*Maarawi v. U.S. Congress*, 24 F. App'x 43 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Maynard v. Architect of the Capitol*,  — F. Supp. 3d —,
    2021 WL 2417350 (D.D.C. June 14, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*McLean v. United States*, 566 F.3d 391 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*McCarthy v. Pelosi*, 5 F.4th 34 (D.C. Cir. 2021), *pet. for cert. filed*,
    No. 21-395 (Sept. 13, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*McGehee v. Casey*, 718 F.2d 1137 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019), *cert. denied*,
    140 S. Ct. 597 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*MINPECO, S.A. v. Conticommodity Services, Inc.*, 844 F.2d 856
    (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*Nixon v. Warner Communications*, 435 U.S. 589 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Paisley v. CIA*, 712 F.2d 686 (D.C. Cir. 1983), *vacated in part
    on other grounds*, 724 F.2d 201 (D.C. Cir. 1983) (per curiam) . . . . . . . . . . . . . . . . . . . . . 6

*Pentagen Technologies Int'l, Ltd. v. Committee on Appropriations,
    U.S. House of Representatives*, 20 F. Supp. 2d 41 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . 11

*Pollack v.  Hogan*, 703 F.3d 117 (D.C. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Randall v. United States*, 95 F.3d 339 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rangel v. Boehner*, 785 F.3d 19 (D.C. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 12

*Rockefeller v. Bingaman*, 234 F. App'x 852 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Semper v. Gomez*, 747 F.3d 229 (3d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Schwartz v. U.S. Dep't of Justice*, 435 F. Supp. 1203 (D.D.C. 1977) . . . . . . . . . . . . . . . . . . 20, 21

*Stone v. Dep't of Housing and Urban Development,*
  859 F. Supp. 2d 59 (D.D.C. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . 25, 26

*Trackwell v. U.S. Government*, 472 F.3d 1242 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Tri-State Hosp. Supply Corp.v. United States*, 341 F.3d 571
  (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Al-Marri*, No. 09-CR-10030, 2009 WL 2949495
  (C.D. Ill. Sept. 10, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Brewster*, 408 U.S. 501 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Choi*, 818 F. Supp. 2d 79 (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Hubbard*, 650 F. 2d 293 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 27

*United States v. Majors*, No. 07-CR-000471, 2010 WL 1241274
  (D. Colo. Mar. 15, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Peoples Temple of the Disciples of Christ,*
  515 F. Supp. 246 (D.D.C. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Rayburn House Office Building, Room 2113,*
  *Washington, D.C. 20515*, 497 F.3d 654 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Smith*, 123 F.3d 140 (3rd Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United We Stand America v. IRS*, 359 F.3d 595 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . 6, 22

*Washington Legal Found. v. U.S. Sentencing Comm'n,*
  17 F.3d 1446 (D.C. Cir. 1994) (*WLF I*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Washington Legal Found. v. U.S. Sentencing Comm'n,*
  89 F.3d 897 (D.C. Cir. 1996) (*WLF II*). . . . . . . . . . . . . . . . . . 14, 16, 17, 19, 20, 21, 25

*Walton v. Federal Bureau of Prisons*, 533 F. Supp. 2d 107
  (D.D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Constitution and Statutes**

U.S. Const. art. I, § 5, cl. 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 22

U.S. Const. art. I, § 5, cl. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21, 22

U.S. Const. art. I, § 6, cl. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

5 U.S.C. § 552(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. § 1361 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

28 U.S.C. § 1651 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Congressional Material**

160 Cong. Rec. S6447 (daily ed. Dec. 9, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

160 Cong. Rec. S6405 (daily ed. Dec. 9, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Clarifying and Protecting the Right of the Public to Information*,
    H.R. Rep. No. 89-1497 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

S. Rep. No. 94-755, book II (1976) (Church Committee) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Report of the Senate Select Committee on Intelligence Committee Study*
    *of the Central Intelligence Agency's Detention and Interrogation*
    *Program*, S. Rep. No. 113-288 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 6

S. Res. 400, 94th Cong., 2d Sess. (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    § 4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 22
    § 5(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    § 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    § 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    § 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 22, 23
    § 8(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    § 8(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

S.  Res. 474, 96th Cong. (1980),
  *reprinted in* S. Doc. No. 116-1, at 194-96 (2020)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Report of the Comm. on the Judiciary of the House of Representatives*
  *Identifying Court Proceedings and Actions of Vital Interest to*
  *Congress*, No. 5, 97th Cong. (Comm. Print 1980) (H. Print No. 97-5) . . . . . . . . . . 20, 21

*Report of the House Select Comm. on Congressional Operations and the*
  *Senate Comm. on Rules and Admin. on Court Proceedings and Actions*
  *of Vital Interest to Congress,* Part 6, 95th Cong. (Comm. Print 1978). . . . . . . . . . . . . . 21

SSCI Press Release*, Committee Releases Study of the CIA's Detention*
  *and Interrogation Program (Dec. 9, 2014), available at*
  https://www.intelligence.senate.gov/press/committee-releases-
  study-cias-detention-and-interrogation-program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Senate Rule XI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Senate Rule XI.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Senate Rule XXI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Senate Rule XXVI.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Senate Rule XXVI.4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Senate Rule XXVI.5(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

Senate Rule XXVI.5(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Senate Rule XXIX.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Senate Rule XXXI.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## INTRODUCTION

In 2009, the Senate Select Committee on Intelligence ("SSCI" or the "Committee") began a multi-year study of the Central Intelligence Agency's terrorist detention and interrogation program instituted following the attacks of 9/11.  After finishing its review, the Committee adopted a 6,700-page report detailing its study of the CIA program. *Report of the Senate Select Committee on Intelligence Committee Study of the Central Intelligence Agency's Detention and Interrogation Program*, S. Rep. No. 113-288 (2014) [hereinafter "Report"].  That Report is classified based on the determination that it contains information the release of which could damage the national security of the United States.  In 2013, the Committee voted to submit for declassification the Report's Executive Summary and Findings and Conclusions, which together totaled over 500 pages.  In December 2014, the Committee released to the public those declassified portions and at the same time submitted the full Report to the Senate.  The full Report remains classified and has never been publicly released.

Plaintiff files this suit to compel SSCI and its Chairman, Senator Mark Warner, to disclose to him the full classified Report, claiming that he is entitled to the Report under the common law right of access to public records.  Plaintiff alleges that SSCI's interest in keeping the Report secret is outweighed by the public interest in disclosure of the full Report, Compl. ¶ 38, and, under the common law right of access, requests that the Court grant him the extraordinary and unprecedented  relief of ordering a congressional committee and its chairman to provide him with a classified committee report that neither the committee nor the Senate has authorized for release to the public.

Plaintiff's complaint, which seeks relief that would significantly intrude upon the Senate's legislative processes, should be dismissed as it is barred on jurisdictional grounds by the Speech or

1

Debate Clause, U.S. Const. art. I, § 6, cl. 1, and sovereign immunity.  The Speech or Debate Clause of the Constitution precludes suit against committees or Members of Congress that arises from or seeks to question or control their legislative activities.  Committee reports fall squarely within the sphere of legislative activity protected by the Clause, and neither Senators nor Senate committees may be subjected to suit to force them to disclose reports that the committee has not released publicly.  While plaintiff suggests, citing a concurring opinion in a recent D.C. Circuit case, *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989 (D.C. Cir. 2021), that the common law right of access outweighs the Speech or Debate Clause protection in this case, the Supreme Court and the D.C. Circuit have made clear that, where the Clause applies, it "is an *absolute* bar to interference[,]" *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975) (emphasis added); *see also Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015) (Clause provides "*absolute* immunity") (emphasis added), and, thus, cannot be overcome by plaintiff's asserted common law right.

Plaintiff's suit is also jurisdictionally barred because the Committee and Chairman Warner, sued in his official capacity, are protected by sovereign immunity.  Plaintiff's complaint fails to identify any statutory waiver of that immunity, nor does his common law claim qualify for the *Larson-Dugan* exception to sovereign immunity.

In addition to these jurisdictional bars, plaintiff's complaint should be dismissed for failure to state a claim as a matter of law because the common law right of access does not apply to documents of a House of Congress, which are subject to each House's control under the Constitution's Journal and Rulemaking Clauses, art. I, § 5, cl. 2 & 3.  *See Goland v. CIA*, 607 F.2d 339, 346 (D.C. Cir. 1978) ("Congress has undoubted authority to keep its records secret, authority rooted in the Constitution, longstanding practice, and current congressional rules."), *vacated in part on other grounds*, 607 F.2d at 367 (D.C. Cir. 1979) (per curiam).  Recognizing a

common law right to access confidential Senate records would contravene Senate rules and procedures and directly undermine the autonomy granted to the Senate in the Journal and Rulemaking Clauses, thus infringing the separation of powers between the branches that such constitutional provisions reinforce.

Even if the common law right of access did apply to Senate records, plaintiff's complaint would nevertheless fail to state a claim because the classified SSCI Report is not subject to compelled disclosure under the standards of that doctrine, as "the need to 'guard against risks to national security interests' overcomes a common-law claim for access." *Dhiab v. Trump*, 852 F.3d 1087, 1098 (D.C. Cir. 2017) (quoting *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980)).

Accordingly, plaintiff's complaint should be dismissed because it is jurisdictionally barred and fails to state a claim.

## BACKGROUND

### A.   Responsibilities of the Senate Select Committee on Intelligence.

In 1976, in response to a recommendation by a Senate select committee that had conducted an in depth study of the intelligence community (often called the "Church Committee" after its chairman), *see* S. Rep. No. 94-755 (1976), Book II, at 339 (recommendation 96), the Senate established a permanent Select Committee on Intelligence ("SSCI" or "the Committee") "to oversee and make continuing studies of the intelligence activities and programs of the United States Government, and to submit to the Senate appropriate proposals for legislation and report to the Senate concerning such intelligence activities and programs." S. Res. 400, 94th Cong., 2d Sess. (1976) [attached as Exhibit A]. The Senate charged SSCI with the responsibility "to provide vigilant legislative oversight over the intelligence activities of the United States to assure

that such activities are in conformity with the Constitution and laws of the United States." *Id.*
To carry out its responsibilities, the Senate authorized SSCI "to make investigations into any
matter within its jurisdiction," *id.* § 5(a), and to bring "to the attention of the Senate . . . any
matters requiring the attention of the Senate." *Id.* § 4(a).

Recognizing that SSCI would handle documents of the utmost sensitivity, including
national security information classified pursuant to procedures established by Executive order, the
Senate placed tight restrictions on access to and disclosure of Committee information. *See id.* §§ 6-8.
Senate Resolution 400, as amended, specifies the mechanism for SSCI to disclose information
publicly, including intricate procedures for SSCI to seek to disclose classified information it has
received. *Id.* § 8. Furthermore, the resolution restricts any disclosure of protected committee
material by any Member, officer, or employee of the Senate, *id.* § 8(c), and authorizes the Senate
Select Committee on Ethics "to investigate any unauthorized disclosure of intelligence information
by a Member, officer or employee of the Senate" who violates that prohibition. *Id.* § 8(d).

**B.      SSCI's Study of the Central Intelligence Agency's Detention
          and Interrogation Program.**

On December 11, 2007, SSCI received a briefing from CIA Director Michael Hayden
regarding the destruction of videotapes of CIA interrogations of certain detainees. *See Report of
the Senate Select Committee on Intelligence Committee Study of the Central Intelligence
Agency's Detention and Interrogation Program*, S. Rep. No. 113-288, at 8 (2014).[1] After that
briefing, SSCI began a review of the destruction of videotapes related to CIA interrogations. *Id.*
Out of that review, SSCI determined that a broader study of the CIA's detention and

---

[1] As explained *infra* at 5, the Executive Summary and Findings and Conclusions of the
SSCI Study were declassified (with redactions) and published. Citations to the SSCI Report are
to that publicly-released, declassified 500-page summary.

interrogation program was needed, and, on March 5, 2009, the Committee, by a vote of 14-1, approved Terms of Reference detailing the scope and mechanism for conducting a study of the CIA program. *Id.* The Committee's years-long study resulted in a report exceeding 6,700 pages with approximately 38,000 footnotes. *Id.* On December 13, 2012, SSCI voted 9-6 to approve the Report of the Committee's study. *Id.*

SSCI then requested that particular Executive agencies review and provide comment on the Report. *Id.* at 9. SSCI received a written response from the CIA and held a series of meetings with the agency. *Id.* The Committee also received Minority views on the Report from some of its Members. *Id.* The Committee revised its findings and conclusions and updated the Report after receiving this input. *Id.* On April 3, 2014, by an 11-3 vote, the Committee sent the Report's Executive Summary and Findings and Conclusions (over 500 pages) to the President for declassification and public release. *Id.* On December 9, 2014, the full 6,700-page SSCI Report was submitted to the Senate for review by Senators in a secure setting, and the declassified Executive Summary and findings and conclusions were released to the public. *See* 160 Cong. Rec. S6447 (daily ed. Dec. 9, 2014) (report submitted by SSCI); *id.* at S6405 (statement of Sen. Feinstein); SSCI Press Release, Committee Releases Study of the CIA's Detention and Interrogation Program (Dec. 9, 2014), *available at* https://www.intelligence. senate.gov/press/committee-releases-study-cias-detention-and-interrogation-program. At the same time, a copy of the full classified SSCI Report was provided to the President and Executive agencies. *See* Letter of Dec. 9, 2014 from Sen. Dianne Feinstein to Senate President Pro Tempore Patrick Leahy, *reprinted in* S. Rep. No. 113-288, at i; Compl. ¶ 25.

At the beginning of the 114th Congress, in January 2015, Senator Richard Burr succeeded Senator Feinstein as Chairman of SSCI. On January 14, 2015, Senator Burr sent a letter to the

President requesting that "all copies of the full and final report in the possession of the Executive Branch be returned immediately to the Committee." *ACLU v. CIA*, 823 F.3d 655, 661 (D.C. Cir. 2016) (quoting Letter from Sen. Richard Burr to President Barack Obama (Jan. 14, 2015)); *see also* Compl. ¶ 27. Senator Burr again requested return of copies of the SSCI Report from the Executive Branch in May 2017. *See Cox v. Dep't of Justice*, 504 F. Supp. 3d 119, 130 (E.D.N.Y. 2020) (describing letter). While copies from various agencies were returned to SSCI, the copy provided to President Obama was maintained as part of his presidential records subject to the Presidential Records Act. *See* Letter from W. Neil Eggleston, Counsel to the President, to Sen. Dianne Feinstein (Dec. 9, 2016), *available at* http://go.usa.gov/x86nB. In addition, Judge Lamberth ordered the preservation of a copy of the report by the Department of Defense and deposit of a copy with the District Court in connection with pending Guantanamo Bay litigation. *See* Order, ECF No. 268, *Al-Nashiri, et al. v. Bush, et al.*, No. 08-cv-1207 (D.D.C. Dec. 28, 2016). The full SSCI Report has not been released to the public and remains classified. *See* S. Rep. No. 113-288, at iv.

### C.    FOIA Litigation in this Circuit Over the SSCI Report.

In 2016, the D.C. Circuit ruled in a FOIA suit brought by the ACLU seeking the SSCI Report from the CIA. *ACLU v. CIA*, 823 F. 3d 655 (D.C. Cir. 2016). The court of appeals, relying on established circuit precedent delineating when documents in an Executive agency's possession constitute congressional records not subject to FOIA[2], held that the SSCI Report was not an agency record under FOIA. *See id.* at 661-68. The court found that "the Senate

---

[2] *Goland v. CIA*, 607 F.2d 339, 344-48 (D.C. Cir. 1978), *vacated in part on other grounds*, 607 F.2d at 367 (D.C. Cir. 1979) (per curiam); *Holy Spirit Ass'n for the Unification of World Christianity v. CIA*, 636 F.2d 838, 839-42 (D.C. Cir. 1980), *vacated in part on other grounds*, 455 U.S. 997 (1982); *Paisley v. CIA*, 712 F.2d 686, 692-94 (D.C. Cir. 1983), *vacated in part on other grounds*, 724 F.2d 201 (D.C. Cir. 1984) (per curiam)); *United We Stand America v. IRS*, 359 F.3d 595, 599-601 (D.C. Cir. 2004).

[Intelligence] Committee's intent to retain control of the Full Report is clear," and "[t]he Full Report therefore remains a congressional document that is not subject to disclosure under FOIA." *Id.* at 667-68.   As the court noted, SSCI correspondence with the Executive branch in conjunction with the SSCI Study "made it clear that the Committee would determine if and when to publicly disseminate the Full Report."  *Id.* at 667.[3]

### D.    Plaintiff's Request for the SSCI Report and Filing of this Lawsuit.

Plaintiff sent a letter on June 4, 2021, to the General Counsel of SSCI requesting a copy of the full SSCI Report, Compl. ¶ 26, but was not provided a copy.  *Id.* ¶ 37.  Plaintiff then filed this lawsuit on August 18, 2021, against SSCI and its current Chairman, Senator Mark Warner, asserting a claim under the common law right of access to public records.  *Id.* ¶ 38.  Plaintiff alleges that the Report "is a 'public record' . . . that does not implicate the Speech or Debate Clause rights of any individual Member of Congress or Committee to a meaningful extent, and SSCI's interest in keeping it secret is outweighed by the uniquely significant public interest in disclosure of the full Report."  *Id.*  In support of plaintiff's common-law-right-of-access claim, the complaint quotes at length from the concurring opinion in a recent D.C. Circuit decision, *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989 (D.C. Cir. 2021).  Compl. ¶¶ 9-13.

---

[3]  In a pending FOIA lawsuit in the Eastern District of New York seeking disclosure of the SSCI Report from the Executive Branch, *Cox v. Dep't of Justice, et al.*, No. 17-CV-3329 (E.D.N.Y.), the district court denied a motion to dismiss finding that, on the limited record the court could consider on such a motion, the court lacked sufficient evidence to "say that Congress 'manifested a clear intent to control' the SSCI Report."  504 F. Supp. 3d 119, 150 (E.D.N.Y. 2020).  That suit remains pending before the district court, and the Department of Justice has moved for summary judgment, in part on the ground that submission of additional materials outside the complaint establish that the Report is a congressional record not subject to FOIA.  *See* Defendants' Mot. for Summ. Judgment, ECF No. 60, *Cox v. Dep't of Justice, et al.*, No. 17-cv-3329 (E.D.N.Y.).

For relief, plaintiff asks the Court to order SSCI and its Chairman to produce the SSCI Report to him, "declare that the common law right of access applies to committees of the U.S. Senate," and "direct the [non-party] Secretary of the Senate to develop a standardized process for the handling of such requests."  *Id.*, Prayer for Relief.

## ARGUMENT

I.    **THE SPEECH OR DEBATE CLAUSE BARS PLAINTIFF'S SUIT TO COMPEL SSCI AND ITS CHAIRMAN TO PRODUCE THE SSCI REPORT.**

Under well established Supreme Court and D.C. Circuit precedent, including the recent *majority* opinion for the Circuit panel in *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989, 991-93 (D.C. Cir. 2021), the SSCI Report constitutes a Senate committee's communication to the Senate on a matter within the legislative sphere, and, therefore, the Committee and its Chairman are absolutely protected from compelled disclosure of the Report by the Speech or Debate Clause.

The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place."  U.S. Const. art. I, § 6, cl. 1.  The Clause's purpose "is to insure that the legislative function the Constitution allocates to Congress may be performed independently," *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975), "without regard to the distractions of private civil litigation or the perils of criminal prosecution."  *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d at 415; *see also Judicial Watch, Inc. v. Schiff*, 998 F.3d at 991 ("[Clause's] purpose is 'to protect the individual legislator, not simply for his own sake, but to preserve the independence and thereby the integrity of the legislative process.'" (quoting *United States v. Brewster*, 408 U.S. 501, 524 (1972)); *McCarthy v. Pelosi*, 5 F.4th 34, 38 (D.C. Cir. 2021) ("The central object of the Speech or Debate Clause is to protect the independence and integrity of the legislature.") (internal

quotation marks and citation omitted), *pet. for cert. filed*, No. 21-395 (Sept. 13, 2021).  By

preserving the independence of the legislative process, the Clause serves to "reinforc[e] the

separation of powers so deliberately established by the Founders."  *Judicial Watch*, 998 F.3d at

991 (quoting *Eastland*, 421 U.S. at, 502).

       To effectuate this independence, the Speech or Debate Clause provides Members of

Congress with immunity from suit and "a testimonial and non-disclosure privilege" that protects

Members "from being compelled to answer questions about legislative activity or produce

legislative materials."  *Howard v. Office of Chief Administrative Officer of U.S. House of*

*Representatives*, 720 F.3d 939, 946 (D.C. Cir. 2013).  This privilege provides Members and

committees of Congress with absolute immunity from compelled testimony, *Eastland*, 421 U.S.

at 499 n.13, and the production of documents.  *See Judicial Watch*, 998 F.3d at 992; *Brown &*

*Williamson*, 62 F.3d at 420; *MINPECO, S.A. v. Conticommodity Services, Inc.*, 844 F.2d 856,

859 (D.C. Cir. 1988); *United States v. Peoples Temple of the Disciples of Christ*, 515 F. Supp.

246, 248-49 (D.D.C. 1981).  As this Circuit has stated, for legislative matters under the Speech or

Debate Clause, "[a] party is no more entitled to compel congressional testimony – or production

of documents – than it is to sue congressmen."  *Brown & Williamson*, 62 F.3d at 421, *quoted in*

*Judicial Watch*, 998 F.3d at 992.

       In applying the Speech or Debate Clause, the Supreme Court has counseled that, because

"the guarantees of the Clause are vitally important to our system of government," they "are

entitled to be treated by the courts with the sensitivity that such important values require."

*Helstoski v. Meanor*, 442 U.S. 500, 506 (1979).  And so, "[w]ithout exception," the Supreme

Court has "read the Speech or Debate Clause broadly to effectuate its purposes."  *Eastland*, 421

U.S. at 501; *Judicial Watch*, 998 F.3d at 991 (same); *Rangel*, 785 F.3d at 23 (same).

Accordingly, "although it speaks of 'Speech or Debate,'" courts have recognized that the Clause "extends to protect all 'legislative acts.'" *Judicial Watch*, 998 F.3d at 991 (quoting *Doe v. McMillan*, 412 U.S. 306, 312 (1973)); *McCarthy*, 5 F.4th at 39 ("[T]he Clause applies not just to speech and debate in the literal sense, but to all 'legislative acts.'").  That is, the Clause provides immunity for all actions "within the sphere of legitimate legislative activity," *Eastland*, 421 U.S. at 501, which encompasses "anything 'generally done in a session of the House by one of its members in relation to the business before it.'"  *Doe v. McMillan*, 412 U.S. 306, 311 (1973) (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1881)).  The Clause, thus, protects

> the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House[.]

*Gravel v. United States*, 408 U.S. 606, 625 (1972); *McCarthy*, 5 F.4th at 39.  Where the Clause applies, its protections are absolute.  *See Eastland*, 421 U.S. at 503 ("[O]nce it is determined that Members are acting within the 'legitimate legislative sphere' the Speech or Debate Clause is an *absolute* bar to interference.") (emphasis added).

The SSCI Report falls squarely within the legislative sphere covered by the Speech or Debate Clause.  Committee investigations are conducted, and reports of those investigations made, to support the legislative responsibilities of the Senate.  *See Ass'n of Am. Physicians and Surgeons v. Schiff*, 518 F. Supp. 3d 505, 518 (D.D.C. 2021) ("Supreme Court and D.C. Circuit precedent make clear that investigating and information gathering enjoy protection under the Clause."), *appeal docketed*, No. 21-5080 (D.C. Cir. Apr. 7, 2021).  As such, committee reports are undoubtedly matters "generally done in a session of the House by one of its members in relation to the business before it,'" *Doe v. McMillan*, 412 U.S. at 311, and are among the "the

deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House."  *Gravel*, 408 U.S. at 625.  In fact, the Supreme Court has specifically and consistently found committee reports to be within the protection of the Speech or Debate Clause. *See Hutchinson v. Proxmire*, 443 U.S. 111, 124-25 (1979) ("[W]e have held that committee hearings are protected, even if held outside the Chambers; *committee reports* are also protected.") (emphasis added); *Gravel*, 408 U.S. at 624 (stating that "voting by Members and *committee reports* are protected" by Speech or Debate Clause) (emphasis added); *Doe v. McMillan*, 412 U.S. at 313; *see also Pentagen Technologies Int'l Ltd. v. Committee on Appropriations, U.S. House of Representatives*, 20 F. Supp. 2d 41, (D.D.C. 1998) (holding staff investigative reports prepared for House committee protected from disclosure by Speech or Debate Clause, where plaintiff sought production under common law right of access to government records).

In addition, and closely related, to the protection accorded the SSCI Report itself, the Committee's decision not to authorize publication and distribution of the Report is likewise protected by the Speech or Debate Clause.  *See Doe v. McMillan*, 412 U.S. at 313 ("The acts of authorizing an investigation . . . , holding hearings . . . , preparing a [committee] report . . . , and authorizing the publication and distribution of that report were all . . . protected by the Speech or Debate Clause.").  Consequently, courts "have no authority to oversee the judgment of the Committee," *id*, regarding whether to release its Report to the public.

The D.C. Circuit's recent decision in *Judicial Watch* applies squarely to this case.  In *Judicial Watch*, the court of appeals found that the Speech or Debate Clause barred plaintiff's common-law-right-of-access lawsuit against the House Permanent Select Committee on

Intelligence and its Chairman seeking disclosure of committee-issued subpoenas and the responses thereto.  The court held that "the Committee's issuance of subpoenas, whether as part of an oversight investigation or impeachment inquiry, was a legislative act protected by the Speech or Debate Clause."  998 F.3d at 992.  On the same reasoning, a committee report of an oversight investigation is equally a legislative matter protected by the Clause, and, therefore, plaintiff's suit against SSCI seeking the Report's disclosure is constitutionally barred.

Without referencing the majority opinion in *Judicial Watch*, plaintiff's complaint cites to the concurring opinion in that case to suggest that, even if the Report is protected by the Speech or Debate Clause, that protection must be balanced against a common law right of access. Compl. ¶ 9.[4]  Such balancing, however, is precluded by binding Supreme Court and Circuit precedent, consistent over five decades, that clearly states that, when the Clause applies, "the prohibitions of the Speech or Debate Clause are *absolute*."  *Eastland*, 421 U.S. at 501 (emphasis added); *see also Rangel*, 785 F.3d at 23 (Clause provides "*absolute* immunity") (emphasis added); *United States v. Rayburn House Office Building, Room 2113, Washington, D.C. 20515*, 497 F.3d 654, 660 (D.C. Cir. 2007) (en banc) ("The bar on compelled disclosure is *absolute*") (emphasis added); *Brown & Williamson*, 62 F.3d at 416 (stating that "legislative privilege is '*absolute*' where it applies'") (emphasis added); *MINPECO, S.A.*, 844 F.2d at 862 ("Once the legislative act test is met, the principle is *absolute*.") (emphasis added and internal quotation marks and citation omitted).  The privilege being absolute, there can be no balancing of the Speech or Debate Clause protection against the common law right to access public records.

---

[4] While the concurring opinion expressed the "belie[f that], in the right case, the application of the Speech or Debate Clause to a common law right of access claim would require careful balancing," the concurring Judge did agree with the panel majority that "under our precedent, the Speech or Debate Clause of the United States Constitution bars Judicial Watch's lawsuit."  *Judicial Watch*, 998 F.3d at 993 (Henderson, J., concurring).

Rather, "once it is determined that Members are acting within the 'legitimate legislative sphere,' the Speech or Debate Clause is an absolute bar to interference." *Eastland*, 421 U.S. at 503.[5]

In sum, the SSCI Report falls squarely within the legislative sphere and, therefore, is protected by the Speech or Debate Clause's absolute privilege.  Accordingly, plaintiff's suit to compel the Senate defendants to disclose the Report under the common law right of access to government records is constitutionally barred.

## II. SENATE DEFENDANTS ARE PROTECTED FROM PLAINTIFF'S SUIT BY SOVEREIGN IMMUNITY.

Plaintiff's suit against SSCI and Senator Warner seeking release of the SSCI Report is also barred by sovereign immunity.  It is well established that, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  This immunity protects government entities from suit, as well as government officials sued in their official capacity, as "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [government] entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Both SSCI, as a congressional committee, and Senator Warner, as a Senator and as the Chairman of SSCI sued in his official capacity, are covered by sovereign immunity. *See Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007) (unpublished) (affirming dismissal of suit against Senator and Representative in their official capacities on sovereign immunity grounds); *see also McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009) (holding that "sovereign immunity extends to the United States Congress when it is sued as a branch of the government"); *Maarawi v. U.S. Congress*, 24 F. App'x 43, 44 (2d Cir. 2001) (holding Congress protected by sovereign immunity from suit claiming that Members made

---

[5] Such balancing is particularly ill-suited as the Speech or Debate Clause is a constitutional privilege and the right asserted by plaintiff is based in common law.

derogatory remarks); *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972) (per curiam) (affirming dismissal because Congress "is protected from suit by sovereign immunity"). Accordingly, absent a waiver, sovereign immunity precludes plaintiff's suit.

Insofar as "[s]overeign immunity is jurisdictional in nature," *Meyer*, 510 U.S. at 475, plaintiff bears the burden to establish affirmatively a waiver of sovereign immunity that would allow him to bring his claim against the Senate defendants. *See Tri–State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003); *Am. Road and Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, 80 (D.D.C. 2012), *aff'd*, No. 12-5244, 2013 WL 599474 (D.C. Cir. Jan. 28, 2013). Plaintiff's complaint fails to identify any such waiver.

Plaintiff cites two statutes as the basis for asserting this Court's jurisdiction over his suit – the general federal question provision, 28 U.S.C. § 1331, and the Mandamus Statute, 28 U.S.C. § 1361. *See* Compl. ¶ 1. Neither provision supports his claim here. First, section 1331 is not a waiver of the government's sovereign immunity. *See Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) ("Neither the general federal question statute nor the mandamus statute by itself waives sovereign immunity."); *Stone v. Dep't of Housing and Urban Development.*, 859 F. Supp. 2d 59, 63 (D.D.C. 2012) (section 1331 does not waive sovereign immunity); *see also Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996) ("[S]ection 1331 'is not a general waiver of sovereign immunity. It merely establishes a subject matter that is within the competence of federal courts to entertain.'") (quoting *Coggeshall Development Corp. v. Diamond*, 884 F.2d 1, 4 (1st Cir. 1989)).

Second, not only is it "well settled" that the Mandamus Statute, 28 U.S.C. § 1361, "does not by itself waive sovereign immunity," *Washington Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 901 (D.C. Cir. 1996); *Swan*, 100 F.3d at 981; *Buaiz v. United States*, 471 F. Supp. 2d

129, 138 (D.D.C. 2007), but, in addition, that statute applies only to Executive branch officials and *not* to committees or Members of Congress.  *See United States v. Choi*, 818 F. Supp. 2d 79, 84 (D.D.C. 2011) ("§ 1361 is only a source of jurisdiction for district courts to exercise writs of mandamus to employees of the *Executive* branch.") (citing cases); *Howard v. U.S. District Court for D.C.*, No. 10-1114, 2010 WL 2639960, at *1 (D.D.C. June 30, 2010) ("the mandamus statute [28 U.S.C. § 1361] applies to . . .  matters arising in the executive branch and its administrative agencies.") (internal quotation marks and citation omitted); *see also Trackwell v. United States Government*, 472 F.3d 1242, 1247 (10th Cir. 2007); *Liberation News Service v. Eastland*, 426 F.2d 1379, 1384 (2d Cir. 1970) ("[I]n enacting [ ] § 1361 . . . Congress was thinking solely in terms of the executive branch."); *Semper v. Gomez*, 747 F.3d 229, 250-51 (3d Cir. 2014).

Neither do the legal authorities plaintiff cites for his cause of action waive sovereign immunity.  Plaintiff brings his suit "pursuant to the common law right of access to public records, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the All Writs Act, 28 U.S.C. § 1651."  Compl., opening paragraph.  First, a common law cause of action does not waive sovereign immunity; rather, only Congress can waive the federal government's sovereign immunity, and it must do so unambiguously in statutory text.  *See Dep't of the Army v. Federal Labor Rel. Auth.*, 56 F.3d 273, 275 (D.C. Cir. 1995) ("[O]fficers of the United States possess no power through their actions to waive an immunity of the United States or to confer jurisdiction on a court in the absence of *some express provision of Congress.*") (emphasis added); *Hubbard v. Administrator, EPA*, 982 F.2d 531, 532 (D.C. Cir. 1992) ("We may not find a waiver unless Congress' intent is 'unequivocally expressed' in the relevant statute."); *see also Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be *unequivocally expressed in statutory text*, . . .  and will not be implied, [and] . . . will be strictly

construed, in terms of its scope, in favor of the sovereign.") (emphasis added).

Similarly, while the Declaratory Judgment Act provides a remedy when a cause of action exists, it does not waive sovereign immunity. *See Stone*, 859 F. Supp. 2d at 58 ("[T]he Declaratory Judgment Act does not provide a waiver of sovereign immunity."); *Walton v. Federal Bureau of Prisons*, 533 F. Supp. 2d 107, 114 (D.D.C. 2008). Lastly, the All Writs Act, 28 U.S.C. § 1651, provides for writs to issue "in aid of jurisdiction" – presupposing a separate basis for jurisdiction – and "does not operate as a waiver of sovereign immunity." *Holt v. Davidson*, 441 F. Supp. 2d  92, 96 (D.D.C. 2006); *Buaiz*, 471 F. Supp. 2d at 138.

Senate defendants recognize that the Court, based on the D.C. Circuit's decision in *Washington Legal Foundation v. U.S. Sentencing Comm'n*, 89 F.3d 897 (D.C. Cir. 1996), recently found the *Larson-Dugan* exception to sovereign immunity to apply to a suit against a House committee and its chairman under the common law right of access to public records in *Judicial Watch, Inc. v. Schiff*, 474 F. Supp. 2d 305, 311-14 (D.D.C. 2020), *aff'd on other grounds*, 998 F.3d 989 (D.C. Cir. 2021), and that the *Larson-Dugan* exception merged the question of sovereign immunity with the merits of the suit in that case. 474 F. Supp. 2d at 314.[6] However, Senate defendants maintain that the *Larson-Dugan* exception is not applicable here. In *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949), the Supreme Court found that there may be "suits for specific relief against officers of the sovereign which are not suits against the sovereign," and thus not barred by the sovereign's immunity, in two limited circumstances:

---

[6] The court of appeals did not reach the sovereign immunity issue. *Judicial Watch, Inc. v. Schiff*, 998 F.3d at 993 ("Because the Speech or Debate Clause bars Judicial Watch's lawsuit, the court need not address the district court's alternative ground for dismissal based on the doctrine of sovereign immunity.").

> [First,] "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are ultra vires his authority and therefore may be made the object of specific relief. . . .
>
> A second type of case is that in which the statute or order conferring power upon the officer to take action in the sovereign's name is claimed to be unconstitutional. . . . Here, too, the conduct against which specific relief is sought is beyond the officer's powers and is, therefore, not the conduct of the sovereign.

*Id.* at 689-90.

The subsequent case of *Dugan v. Rank*, 372 U.S. 609 (1963), affirmed that the *Larson* exception to sovereign immunity applies in two specific instances, cases involving "(1) action by officers beyond their statutory powers and [where] (2) even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void." *Id.* at 621-22. As the D.C. Circuit has described, "the [*Larson-Dugan*] exception" applies to "suits for specific relief against officers of the sovereign allegedly acting beyond statutory authority or unconstitutionally." *Pollack v. Hogan*, 703 F.3d 117, 120 (D.C. Cir. 2012) (internal quotation marks omitted).

Plaintiff's claim here fits neither part of the *Larson-Dugan* exception. First, plaintiff makes no claim that the Senate defendants have acted unconstitutionally. Second, plaintiff does not allege that the defendants have acted "beyond statutory authority." Plaintiff does assert his common law claim under the Mandamus Act, 28 U.S.C. § 1361, and the court in *Washington Legal Foundation* found that "[i]f a plaintiff seeks a writ of mandamus to force a public official to perform a duty imposed upon him in his official capacity, . . . no separate waiver of sovereign immunity is needed[,]" as a claim under the Mandamus Statute qualifies for the *Larson-Dugan* exception to sovereign immunity. 89 F.3d at 901 (citing *Chamber of Commerce v. Reich*, 74

17

F.3d 1322, 1329 (D.C. Cir. 1996)).  However, as noted earlier, *supra* at 15, the Mandamus

Statute does not apply to the Senate defendants.  Hence, unlike in *Washington Legal Foundation*,

which relied on the statutory right to mandamus in section 1361 as the basis for the *Larson-*

*Dugan* exception, plaintiff here has no such statutory basis to point to.

Plaintiff's allegation that the Senate defendants violated a common law right is

insufficient to qualify for the *Larson-Dugan* exception.  *See Maynard v. Architect of the Capitol*,

— F. Supp. 3d —, 2021 WL 2417350, at *10 (D.D.C. June 14, 2021) ("The Court concludes that

the *Larson-Dugan* exception is inapplicable here because the plaintiff has identified no statutory

source of authority that limits the defendant's actions. . . ," finding allegations that legislative

branch defendant violated duty owed plaintiff arising out of defendant's human resources manual

insufficient to trigger application of the exception "as defendant's human resources manual is not

a statute.").[7]  As the Supreme Court in *Larson* explained, the officer's acting beyond his *statutory*

authority is what transforms the officer's acts into "individual and not sovereign actions," that

lose the cloak of sovereign immunity.  337 U.S. at 689.  That the officer in carrying out his duties

may allegedly violate a common law right is not sufficient to remove the protection of sovereign

immunity.  *See id.* ("We hold that if the actions of an officer do not conflict with the terms of his

valid statutory authority, then they are the actions of the sovereign, whether or not they are

tortious under general law[.]").  The Court explained:

> [I]n a suit against an agency of the sovereign, it is not sufficient that [plaintiff]
> claim [an invasion of his recognized legal rights].  Since the sovereign may not be

---

[7]  While the court of appeals in *Chamber of Commerce v. Reich* refers to the *Larson*
exception applying where "the federal officer, against whom injunctive relief is sought, allegedly
acted in excess of his legal authority," 74 F.3d at 1329, the claim in that case was that the
Secretary of Labor violated the National Labor Relations Act and the Procurement Act – federal
*statutes*.  Both *Larson* and *Dugan* clearly state that the exception to sovereign immunity applies
when the officer is alleged to have acted beyond his *statutory* powers.

sued, it must also appear that the action to be restrained or directed is not action of the sovereign.  The mere allegation that the officer, acting officially, wrongfully holds property to which the plaintiff has title does not meet that requirement. True, it establishes a wrong to the plaintiff.  But it does not establish that the officer, in committing that wrong, is not exercising the powers delegated to him by the sovereign.  If he is exercising such powers the action is the sovereign's and a suit to enjoin it may not be brought unless the sovereign has consented.

*Id.* at 693 (internal footnotes and citations omitted).

Accordingly, plaintiff has not identified any statute that waives sovereign immunity for his claim against the Senate defendants, and the *Larson-Dugan* exception does not apply to his common law claim.  Therefore, the Court is without jurisdiction to hear plaintiff's suit.

## III.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE COMMON LAW RIGHT OF ACCESS TO GOVERNMENT RECORDS.

"The courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."  *Nixon v. Warner Communications* 435 U.S. 589, 597 (1978) (internal footnotes and citations omitted).  The Court in *Nixon* recognized that the paucity of case law regarding this seldom-discussed federal common law right left the courts with little direction on the scope or application of this common law doctrine. *See id.* at 598-99 ("It is difficult to distill from the relatively few judicial decisions a comprehensive definition of what is referred to as the common-law right of access or to identify all the factors to be weighed in determining whether access is appropriate.").  Post-*Nixon*, the D.C. Circuit analyzed the common law right in two successive opinions, *Washington Legal Foundation v. U.S. Sentencing Comm'n (WLF I)*, 17 F.3d 1446, 1451-52 (D.C. Cir. 1994), and *Washington Legal Foundation v. U.S. Sentencing Comm'n (WLF II)*, 89 F.3d 897, 902-07 (D.C. Cir. 1996), concluding that application of the common law right of access entailed a two-step test: first, a court must decide "whether the document sought is a 'public record.'  If the answer is

yes, then the court should proceed to balance the government's interest in keeping the document secret against the public's interest in disclosure." *Id.* at 899 (quoting *WLF I*, 17 F.3d at 1451-52).

Plaintiff's complaint fails to state a claim under the common law right of access for two reasons: (1) the common law right does not apply to documents of a House of Congress; and, even if it did, (2) the classified SSCI Report is not subject to compelled disclosure under the standards of that doctrine.

### A.   The Common Law Right of Access to Public Records Does Not Apply to Documents of a House of Congress.

While the D.C. Circuit has stated that the common law right of access applies to all three branches, *see WLF II*, 89 F.3d at 903 (citing *Schwartz v. U.S. Dep't of Justice*, 435 F. Supp. 1203, 1203 (D.D.C. 1977)); *Center for National Security Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 936 (D.C. Cir. 2003), the court of appeals has never directly addressed the applicability of the doctrine to the records of the House or Senate.[8]  Hence, the reference to the common law

---

[8]  The district court in *Schwartz v. U.S. Dep't of Justice* held that "Congress is subject to the common law rule which guarantees the public a right to inspect and copy public records." 435 F. Supp. 1203, 1204 (D.D.C. 1977).  While *WLF II* cites the *Schwartz* decision as having been affirmed, 595 F.2d 888 (D.C. Cir. 1979) (table), *see WLF II*, 89 F.3d at 903, the matter affirmed by the court of appeals was a later ruling of the district court regarding the Department of Justice's withholding under FOIA, which did not involve the question of the applicability to Congress of the common law right of access to public records.  In *Schwartz*, the plaintiff brought suit to obtain records from the Department of Justice (pursuant to FOIA) and from U.S. Representative Peter Rodino, Chairman of the House Judiciary Committee (pursuant to the common law right of access to public records).  435 F. Supp. at 1203-04; *see also Report of the Comm. on the Judiciary of the House of Representatives Identifying Court Proceedings and Actions of Vital Interest to Congress*, No. 5, 97th Cong., at 94 (Comm. Print 1980) (H. Print No. 97-5) [excerpt with cited pages provided at Exhibit B].  After Representative Rodino filed a motion to dismiss on jurisdictional grounds and for failure to state a claim, the district court issued the ruling cited above holding that the common law right of access applied to Congress.  *See Schwartz*, 435 F. Supp. at 1203-04.  On December 12, 1977, the court granted Representative Rodino's subsequent summary judgment motion based on Rodino's attestation that any responsive documents had been provided.  *See* H. Print No. 97-5, at 96.  Later, the Department of Justice separately moved for summary judgment on the documents it withheld under FOIA.  *Id.*  In a February 9, 1978 memorandum order, the court granted that

(continued...)

right of access applying to the legislative branch has never been analyzed or applied to the House or Senate by the court of appeals.  And none of the state cases cited by the Court in *Nixon*, or by this Circuit in *WLF II*, as a basis for recognizing this common law right involved non-public records of state legislatures, much less the Congress.  Accordingly, the courts are in "uncharted waters" in coming to terms with the common law right and its potential application to Congress's own records.  *Cf. WLF II*, 89 F.3d at 902-03 (explaining that "when we look for guidance concerning the application of this [common law] right [of access to public records] we find that we are in uncharted waters[,]" as there were "only a few cases, arising from still fewer contexts, in which any federal court acknowledged the common law right of access prior to its endorsement by this court and the Supreme Court [in *Nixon*].").

While this Court previously applied the doctrine to congressional documents, *see Judicial Watch*, 474 F. Supp. at 314, the court of appeals did not reach the question.  *See Judicial Watch*, 998 F.3d at 993.  Senate defendants submit that the application of the common law doctrine to Senate documents conflicts with the constitutional powers granted to Congress under our system of separated powers, previous statements by the D.C. Circuit recognizing Congress's authority over its documents, and the nature of congressional activity.

The Constitution provides that "Each House shall keep a Journal of its Proceedings, and from time to time publish the same, excepting such parts as may in their Judgment require Secrecy."  U.S. Const. art. I, § 5, cl. 3 (Journal Clause).  This Clause provides Congress with the

---

[8](...continued)

motion and dismissed the case.  *Id.* at 97; *see also Report of the House Select Comm. on Congressional Operations and the Senate Comm. on Rules and Admin. on Court Proceedings and Actions of Vital Interest to Congress,* Part 6, 95th Cong., at 275-83 (Comm. Print 1978) [excerpt with cited pages provided at Exhibit C].  Plaintiff appealed that February 9, 1978 Order that addressed only his claims against the Department of Justice; in April 1979, the court of appeals affirmed the February 9, 1978 Order without opinion.  *See* H. Print No. 97-5, at 97.

authority to determine which records of its proceedings to make public and which to keep secret.
As the D.C. Circuit has found, "Congress has undoubted authority to keep its records secret,
authority rooted in the Constitution, longstanding practice, and current congressional rules."
*Goland*, 607 F.2d at 346 (citing Journal Clause, U.S. Const. art. I, § 5, cl. 3) (footnotes omitted);
*United We Stand America, Inc. v. IRS*, 359 F.3d 595, 599 (D.C. Cir. 2004)  (noting that D.C.
Circuit in *Goland* had "emphasiz[ed] Congress' right to keep its own materials confidential").  In
FOIA cases involving congressional records in the hands of Executive agencies, the court of
appeals has noted that compelling disclosure of the documents under that statute "would force
Congress 'either to surrender its *constitutional prerogative of maintaining secrecy*, or to suffer an
impairment of its oversight role.'"  *United We Stand*, 359 F.3d at 599 (quoting *Goland*, 607 F.2d
at 346) (emphasis added); *see also ACLU v. C.I.A.*, 823 F.3d 655, 663 (D.C. Cir. 2016).  To
whatever extent the common law right of public access applies to government documents
generally, the Constitution's Journal Clause supersedes that right with regard to Congress's own
documents and gives the House and Senate each the authority to determine which of their
respective records to keep confidential.

The Constitution also allocates to each House of Congress the authority to "determine the
Rules of its Proceedings."  U.S. Const. art. I, § 5, cl. 2.  Pursuant to this power, the Senate has
enacted various rules governing the disclosure and dissemination of Senate documents, *see* Rules
XI, XXIX.5 of the Standing Rules of the Senate.  In addition, the Senate has established specific
rules regarding the disclosure of sensitive information by SSCI, particularly classified material
such as the SSCI Report.  *See* S. Res. 400, 94th Cong., 2d Sess., § 8 (1976), *as amended*; *id.*
§ 4(a) (in reporting to the Senate, SSCI "shall proceed in a manner consistent with section 8(c)(2)
to protect national security"); *see also* SSCI Committee Rule 9 ("Procedures for Handling

22

Classified or Committee Sensitive Material")[9].

In addition, the Senate has established procedures for archiving committee records and provided for a default schedule for public availability for records held at the National Archives, as appropriate. *See* Senate Rule XI.2 ("The Secretary of the Senate shall obtain at the close of each Congress all the noncurrent records of the Senate and of each Senate committee and transfer them to the National Archives and Records Administration for preservation, subject to the orders of the Senate."); S. Res. 474, 96th Cong. (1980), *reprinted in* S. Doc. No. 116-1, at 194-96 (2020) (providing rules for public access to Senate records, including committee records, deposited with the National Archives, but not authorizing public disclosure if "prohibited by law or Executive order"); *see also In re Shepard*, 800 F. Supp. 2d 37, 40-41 (D.D.C. 2011) ("The U.S. Senate and House of Representatives determine the rules of access to congressional records held by NARA. For Senate records, access is governed by Senate Resolution 474 of the 96th Congress. . . .").

Permitting courts to entertain suits seeking to impose a common law right of access to Senate records would contravene these Senate rules and procedures and directly undermine the powers granted the Senate in the Rulemaking Clause, thereby infringing on the separation of powers between the branches.  "Decisions regarding public access to congressional records are properly committed to Congress. The judiciary has never asserted the institutional competence to make such decisions, and there is no principled basis for doing so here. The Senate and House rules plainly do not permit access to the requested records at this time." *In re Shepard*, 800 F. Supp. 2d at 41; *cf. Exxon Corp. v. FTC*, 589 F.2d 582, 590 (D.C. Cir. 1978) ("[W]here constitutional rights are not violated, there is no warrant for the judiciary to interfere with the

---

[9] Committee rules are adopted by committees pursuant to authority granted them by Senate Rule XXVI.2.

internal procedures of Congress[.]").  To the extent that there was a recognized common law

right of access to legislative records, the Senate rules, enacted pursuant to its constitutional

authority, have displaced it.  *See In re Motions of Dow Jones & Co.*, 142 F.3d 496, 504 (D.C.

Cir. 1998) ("In any event, even if there were once a common law right of access to materials of

the sort at issue here, the common law has been supplanted by Rule 6(e)(5) and Rule 6(e)(6) of

the Federal Rules of Criminal Procedure.  These Rules, not the common law, now govern."); *cf.*

*McKeever v. Barr*, 920 F.3d 842, 848-49 (D.C. Cir. 2019) (finding that Fed. R. Crim. P. 6(e)

eliminated any "preexisting authority at common law" of district court to disclose grand jury

materials), *cert. denied*, 140 S. Ct. 597 (2020).

 The application of the common law right of public access is particularly ill-suited to the

records of Congress.  Congress has traditionally provided broad access to its activities.  Senate

floor proceedings were first opened to the public in 1795, have been broadcast on live television

since 1986, and are made available to the public in the printed Congressional Record and

archived on the Senate website (www.senate.gov).  Most committee hearings and business

meetings are also broadcast or live-streamed and archived on the Senate website – and notices of

these activities are circulated beforehand.  *See* Senate Rules XXVI.5(b) & (e), XXVI.4(a).

 Committee reports and other Senate documents are available to the public (again,

excepting those with sensitive or classified information) on-line at Senate websites and,

generally, through the web portal of the Government Publishing Office (www.govinfo.gov).  In

addition, Members issue frequent press statements detailing their views and activities.

Accordingly, when it comes to the type of records that fall within the traditional common law

right of access – that is, "document[s] created and kept for the purpose of memorializing or

recording an official action, decision, statement, or other matter of legal significance, broadly

24

conceived," *WLF II*, 89 F.3d at 905 – Congress routinely makes publicly available such materials.[10]

As to those limited instances when committee reports or hearings or floor proceedings are not made public, Congress is best-situated, congruent with the independent operation of the legislature mandated by the Constitution's separation of powers, to make such determinations for itself and has established rules for doing so.  *See, e.g.*, Senate Rule XXVI.5(b) (providing that committee meetings and hearings "shall be open to the public," unless, by committee vote, "it is determined that the matters to be discussed or the testimony to be taken" will disclose information in six defined categories); Senate Rules XXI and XXXI.2 (procedures for closing floor sessions).

Accordingly, in light of the constitutional bases for Congress's control of its records, D.C. Circuit precedent recognizing Congress's "undoubted authority to keep its records secret" as it determines necessary, and the fact that congressional proceedings are already conducted largely in public, the common law right of access to government records is not applicable to Senate documents generally or the committee report sought here.

### B.  The SSCI Report Is Not Subject to Compelled Disclosure Under the Common Law Right of Access to Public Records.

Not every record in the government's possession is subject to the common law right of access.  "There is, for instance, no [common law] right of access to 'documents which have traditionally been kept secret for important policy reasons.'"  *In re Motions of Dow Jones & Co.*, 142 F.3d at 504 (quoting *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989)).  In such areas, where the government's interest in secrecy categorically outweighs the public interest in disclosure, the common law right gives way, such as with grand jury records.

---

[10]  Many Senate records that are not publicly available include constituent casework, deliberative staff communications, draft legislative materials, schedules, and internal procedural and operational matters, none of which would fall within the definition of a public record.

25

*See, e.g.*, *In re Motions of Dow Jones & Co.*, 142 F.3d at 504 ("Although some have identified a common law tradition of public access to criminal trials, this never extended to preindictment, pretrial proceedings involving a grand jury."); *United States v. Smith*, 123 F.3d 140, 156 (3d Cir. 1997) ("There is no common law right of access to grand jury materials.  Unlike judicial records to which a presumption of access attaches when filed with a court, grand jury materials have historically been inaccessible to the press and the general public, and are therefore not judicial records in the same sense.").

Similarly, classified documents have never been understood to be publicly available.  Indeed, far from there being any common law right to such information, there is a long tradition that such records are not disclosed publicly.  *See Dhiab v. Trump*, 852 F.3d 1087, 1094 (D.C. Cir. 2017)  ("[F]rom the beginning of the republic to the present day, there is no tradition of publicizing secret national security information involved in civil cases, or for that matter, in criminal cases.  The tradition is exactly the opposite.") (internal footnotes and citations omitted).[11]  The courts, including the D.C. Circuit, have recognized the compelling government interest in keeping classified documents secret, *see Dhiab*, 852 F.3d at 1098 ("It bears repeating that the government 'has a *compelling* interest in protecting . . . the secrecy of information important to our national security . . . .'") (quoting *McGehee v. Casey*, 718 F.2d 1137, 1143 (D.C. Cir. 1983)), and have held that this compelling interest in confidentiality outweighs any countervailing public interest in disclosure under the common law right of access.  "The law of

---

[11]  The first exemption to disclosure of agency records under FOIA is for classified documents.  *See* 5 U.S.C. § 552(b)(1).  As explained in the legislative history of that provision, "citizens both in and out of government can agree to restrictions on categories of information which the President has determined must be kept secret to protect the national defense or to advance foreign policy, such as [classified] matters. . . ." *Clarifying and Protecting the Right of the Public to Information*, H.R. Rep. No. 89-1497, at 30-31 (1966).

this circuit is that the need to 'guard against risks to national security interests' overcomes a common-law claim for access." *Dhiab*, 852 F.3d at 1098 (quoting *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980)).[12]

The SSCI Report is classified based on the determination that it contains information the release of which could damage the national security of the United States.  The U.S. Government has a compelling national security interest in keeping this classified Report secret that outweighs any countervailing interest in public disclosure.  The common law right of access does not permit plaintiff to gainsay the extremely sensitive nature of the classified Report, nor should it dissuade the Court from deferring to the political branches in determining the extent to which that Report should be made public.  *Cf. Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988) ("'For reasons . . . too obvious to call for enlarged discussion,' the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it. . . .") (quoting *CIA v. Sims*, 471 U.S. 159, 170 (1985)).

Further weighing against any interest in public disclosure of the classified SSCI Report is the fact that the Report's Findings and Conclusions and 500-page Executive Summary have been declassified and released publicly, with minimal redactions.  *See ACLU v. CIA*, 823 F.3d at 660 (referencing declassified Executive Summary as "minimally redacted").  As substantial information on the Committee's study and findings has already been made available to the

---

[12]  *See also United States v. Majors*, No. 07–CR–000471, 2010 WL 1241274, at *1 (D. Colo. Mar. 15, 2010) ("The Court finds that the Government's interest in protecting the national security and preventing the unnecessary dissemination of classified information outweighs the defendant's and/or the public's right of access to these materials."); *United States v. Al-Marri*, No. 09-CR-10030, 2009 WL 2949495, at *1 (C.D. Ill. Sept. 10, 2009) (finding that "the Government's interest in protecting the national security and preventing the unnecessary dissemination of classified information outweighs the defendant's and/or the public's right of access to these materials").

public, whatever additional benefit to the public interest might be gained from releasing the full

Report cannot outweigh the government's compelling interest in maintaining its confidentiality.

Accordingly, even if the doctrine applied to confidential Senate committee records,

plaintiff's common-law-right-of-access claim to compel disclosure of the full SSCI report fails to

state a claim as a matter of law.  *See Dhiab*, 852 F.3d at 1098 ("Because keeping the [classified]

recordings sealed is narrowly tailored to protect the government's compelling interest in guarding

national security, intervenors cannot prevail on their common-law claim.").

## CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiff's complaint for lack of

jurisdiction and failure to state a claim.

Respectfully submitted,

/s/ Patricia Mack Bryan
Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel), (202) 224-3391 (fax)

Dated: October 19, 2021                    Attorneys for Defendants