# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                           )
SHAWN MUSGRAVE,               )
                           )
         Plaintiff,         )
                           )   Civil Action No. 1:21-cv-02198-BAH
         v.            )
                           )
MARK WARNER and       )
U.S. SENATE SELECT COMMITTEE  )
ON INTELLIGENCE,        )
                           )
         Defendants.     )
_____)

# DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel), (202) 224-3391 (fax)

Attorneys for Defendants

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      SENATE DEFENDANTS ARE IMMUNE FROM PLAINTIFF'S SUIT
        UNDER THE SPEECH OR DEBATE CLAUSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.     SOVEREIGN IMMUNITY PRECLUDES PLAINTIFF'S SUIT . . . . . . . . . . . . . . . . . . 11

III.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER
        THE COMMON LAW RIGHT OF ACCESS TO PUBLIC RECORDS . . . . . . . . . . . . 15

        A.      Documents of a House of Congress Are Not Subject to the
                Common Law Right of Access to Public Records. . . . . . . . . . . . . . . . . . . . . 15

        B.      The Common Law Right of Access Does Not Require
                Disclosure of the SSCI Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.     SENATE DEFENDANTS' MOTION ASSERTS LEGAL GROUNDS
        APPROPRIATE FOR RESOLUTION IN A MOTION TO DISMISS,
        AND PLAINTIFF'S REQUEST FOR DISCOVERY IS NEITHER
        RELEVANT NOR PERMITTED BY THE SPEECH OR DEBATE
        CLAUSE PRIVILEGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. CIA*, 823 F.3d 655 (D.C. Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 16, 25

*Al-Nashiri, et al. v. Bush, et al.*, No. 08-cv-1207 (D.D.C. Dec. 28, 2016),
    Order, ECF No. 268 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125 (2011) . . . . . . . . . . . . . . . . . . . . 15

*Barenblatt v. United States*, 360 U.S. 109 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 25

*Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408
    (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 24

*Buaiz v. United States*, 471 F. Supp. 2d 129 (D.D.C. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Center for National Security Studies v. U.S. Dep't of Justice*,
    331 F.3d 918 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Dhiab v. Trump*, 852 F.3d 1087 (D.C. Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 19, 20

*Doe v. McMillan*, 412 U.S. 306 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6

*Dugan v. Rank*, 372 U.S. 609 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975) . . . . . . . . . . . . . . . . 2, 5, 7, 9, 24, 25

*FDIC v. Meyer*, 510 U.S. 471 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Goland v. CIA*, 607 F.2d 33 (D.C. Cir. 1978), *vacated in part on
    other grounds*, 607 F.2d 367 (D.C. Cir. 1979) (per curiam). . . . . . . . . . . . . . . . . . . . . 3, 16

*Gravel v. United States*, 408 U.S. 606 (1972) . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6, 8, 9, 24, 25

*Harrington v. Bush*, 553 F.2d 190 (D.C. Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hearst v. Black*, 87 F.2d 68 (D.C. Cir. 1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Holt v. Davidson*, 441 F. Supp. 2d 92 (D.D.C. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Howard v. Office of Chief Admin. Officer of U.S. House of  Representatives*,
        720 F.3d 939 (D.C. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 24

*Howard v. U.S. District Court for D.C.*, No. 10-1114, 2010 WL 2639960
        (D.D.C. June 30, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hutchinson v. Proxmire*, 443 U.S. 111 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Motions of Dow Jones & Co.*, 142 F.3d 496 (D.C. Cir. 1998). . . . . . . . . . . . . . . . . . . 17, 19

*In re Shepard*, 800 F. Supp. 2d 37 (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Judicial Watch, Inc. v. Schiff*, 998 F.3d 989 (D.C. Cir. 2021) . . . . . . . . . . . . . . . 2, 5, 6, 7, 13, 15

*Judicial Watch, Inc. v. Schiff*, 474 F. Supp. 2d 305 (D.D.C. 2020),
        *aff'd*, 998 F.3d 989 (D.C. Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12, 15, 21, 23

*Lane v. Pena*, 518 U.S. 187 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

*Liberation News Service v. Eastland*, 426 F.2d 1379 (2d Cir. 1970) . . . . . . . . . . . . . . . . . . . 13

*Loving v. United States*, 517 U.S. 748 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Maynard v. Architect of the Capitol*, 544 F. Supp. 3d  64 (D.D.C. 2021) . . . . . . . . . . . . . . . . 12

*McCarthy v. Pelosi*, 5 F.4th 34 (D.C. Cir. 2021),
        *cert. denied*, 142 S.Ct. 897 (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 24, 25

*McGehee v. Casey*, 718 F.2d 1137 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*McGrain v. Daugherty,* 273 U.S. 135 (1927). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*McSurely v. McClellan*, 521 F.2d 1024 (D.C. Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*MINPECO, S.A. v. Conticommodity Services, Inc.*, 844 F.2d 856
        (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 24

*Pentagen Techs. Int'l, Ltd. v. Committee on Appropriations,*
        *U.S. House of Representatives*, 20 F. Supp. 2d 41 (D.D.C. 1998) . . . . . . . . . . . . . . . . . 14

*Pollack v. Hogan*, 703 F.3d 117 (D.C. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Porteous v. Baron*, 729 F. Supp. 2d 158 (D.D.C. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Power v. Barnhart*, 292 F.3d 781 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Rangel v. Boehner*, 785 F.3d 19 (D.C. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 24

*Rangel v. Boehner*, 20 F. Supp. 3d 148 (D.D.C. 2013),
    *aff'd*, 785 F.3d 19 (D.C. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Schwartz v. U.S. Dep't of Justice*, 435 F. Supp. 1203 (D.D.C. 1977) . . . . . . . . . . . . . . . . . . 14, 15

*Semper v. Gomez,* 747 F.3d 229 (3d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Settles v. U.S. Parole Comm'n,* 429 F.3d 1098 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Smith v. Scalia*, 44 F. Supp. 3d 28 (D.D.C. 2014)
    *aff'd*, 2015 WL 13710107 (D.C. Cir. Jan. 14, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Stewart v. Nat'l Education Ass'n*, 471 F.3d 169 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 23

*Stone v. Dep't of Housing and Urban Dev.*, 859 F. Supp. 2d 59 (D.D.C. 2012) . . . . . . . . . . . . 12

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . 19

*Trackwell v. United States Government*, 472 F.3d 1242 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . 13

*United States v. Brewster*, 408 U.S. 501 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Choi*, 818 F. Supp. 2d 79 (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Helstoski*, 442 U.S. 477 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 24

*United States v. Hubbard*, 650 F. 2d 293 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 20

*United States v. Rayburn House Office Building, Room 2113,*
    *Washington, D.C. 20515*, 497 F.3d 654 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 7

*United We Stand America v. IRS*, 359 F.3d 595 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Washington Legal Found. v. U.S. Sentencing Comm'n*,
    89 F.3d 897 (D.C. Cir. 1996) (*WLF II*). . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 12, 13, 15, 21

*Watkins v. United States*, 354 U.S. 178 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**Constitution and Statutes**

U.S. Const. art. I, § 5, cl. 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15

U.S. Const. art. I, § 5, cl. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15, 16

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

28 U.S.C. § 1361 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 12, 13

28 U.S.C. § 1651 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

28 U.S.C. § 2072 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Congressional Material**

National Defense Authorization Act for FY 2016,
    Pub. L. No. 114-92, § 1045 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Report of the Senate Select Committee on Intelligence Committee Study*
    *of the Central Intelligence Agency's Detention and Interrogation*
    *Program*, S. Rep. No. 113-288 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 23

S.  Res. 474, 96th Cong. (1980),
    *reprinted in* S. Doc. No. 116-1, at 194-96 (2020)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Senate Rule XI.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Senate Rule XXV.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Senate Rule XXVI.1, 7-8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# INTRODUCTION

Plaintiff filed this suit against the Senate Select Committee on Intelligence ("SSCI" or the "Committee") and Chairman Warner – collectively the "Senate defendants" – to compel production of the full, classified *Report of the Senate Select Committee on Intelligence Committee Study of the Central Intelligence Agency's Detention and Interrogation Program*, S. Rep. No. 113-288 (2014) [hereinafter "Report"], under the common law right of access to public records.  Senate defendants moved to dismiss plaintiff's suit for lack of jurisdiction and failure to state a claim.  *See* Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss, ECF No. 5-1 [hereinafter "Defs.' Memo."].  Plaintiff's opposition[1] fails to rebut either ground for dismissing this suit.

As defendants explained in their motion, the Court lacks jurisdiction here because plaintiff's claim is precluded by the Speech or Debate Clause and sovereign immunity.  The SSCI Report, and the Committee's decision to release publicly only the 500-page Executive Summary and findings and conclusions of the Report, plainly fall within the legislative sphere as they involve "the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House."  *Gravel v. United States*, 408 U.S. 606, 625 (1972).  Indeed, the Supreme Court has been quite clear: "*committee reports* are protected" by the Speech or Debate Clause.  *Id.* at 624 (emphasis added); *see also Doe v. McMillan*, 412 U.S. 306, 313 (1973).  Senate defendants are therefore immune from plaintiff's suit seeking to compel production of the

---

[1]  Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss and in Support of Plaintiff's Cross-motion for Partial Summary Judgment, ECF No. 15 [hereinafter "Pl.'s Opp."].

Report.  *See Judicial Watch, Inc. v. Schiff*, 998 F.3d 989, 991-93 (D.C. Cir. 2021).

Plaintiff's opposition asserts that not all congressional committee reports are legislative acts covered by the Speech or Debate Clause, which he maintains in the face of Supreme Court decisions establishing without qualification that committee reports are so covered.  Instead, he relies on a single judge's concurring opinion in *Judicial Watch*, 998 F.3d at 993-99 (Henderson, J., concurring), while ignoring the majority opinion's holding, directly relevant here, that the Clause bars suit seeking to compel a congressional committee to produce non-public investigative records. Moreover, the suggestion of that concurrence that plaintiff advocates, that the Speech or Debate Clause may not protect some committee reports when balanced against the public's interest in disclosure, directly conflicts with well-established precedent that "the prohibitions of the Speech or Debate Clause are *absolute*," *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 (1975) (emphasis added), and therefore not subject to any balancing of interests.  Plaintiff cites no authority that would allow his claim to evade the Speech or Debate Clause's absolute bar.

Plaintiff's suit is equally barred by sovereign immunity, and neither plaintiff's complaint nor his opposition identifies any statute that expressly waives that immunity for his common law claim.  Plaintiff's opposition responds that his claim falls under the *Larson-Dugan* exception to sovereign immunity.  However, *Larson-Dugan* applies only when a lawsuit claims that government defendants have acted beyond their *statutory* powers or *unconstitutionally*, and plaintiff's complaint alleges neither.  While plaintiff's opposition points out that this Court's prior decision in *Judicial Watch, Inc. v. Schiff*, 474 F. Supp. 2d 305 (D.D.C. 2020), and the D.C. Circuit's decision in *Washington Legal Foundation v. U.S. Sentencing Comm'n (WLF II)*, 89 F.3d 897 (D.C. Cir. 1996), permitted a common law right of access claim to proceed under *Larson-Dugan*, those cases relied on the Mandamus Statute, 28 U.S.C. § 1361, as the *statutory*

basis for applying the *Larson-Dugan* exception.  The Mandamus Statute, however, does not apply to Committees or Members of Congress, *see* Defs.' Memo. at 15, and so cannot supply the statutory limitation necessary to invoke the *Larson-Dugan* exception.

In addition to raising these jurisdictional deficiencies, Senate defendants' motion demonstrates that plaintiff's complaint fails to state a claim under the common law right of access.  First, the complaint does not state a claim because that common law doctrine does not apply to documents of a House of Congress, as each House is given control over its documents by the Constitution's Journal and Rulemaking Clauses, art. I, § 5, cl. 2 & 3, as the D.C. Circuit has recognized.  *See Goland v. CIA*, 607 F.2d 339, 346 (D.C. Cir. 1978) ("Congress has undoubted authority to keep its records secret, *authority rooted in the Constitution*, longstanding practice, and current congressional rules.") (emphasis added), *vacated in part on other grounds*, 607 F.2d 367 (D.C. Cir. 1979) (per curiam).  Second, even if the common law right of access did apply to some Senate records, plaintiff's complaint would still fail to state a claim because, as a matter of law, the classified SSCI Report is not subject to compelled disclosure under the standards of that doctrine, as "the need to 'guard against risks to national security interests' overcomes a common-law claim for access."  *Dhiab v. Trump*, 852 F.3d 1087, 1098 (D.C. Cir. 2017) (quoting *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980)).

Finally, the Court should reject plaintiff's novel suggestion that the legal issues raised by Senate defendants are not appropriately resolved in a motion to dismiss, and that, instead, the Court should permit discovery into the purposes behind the Committee's investigation and its report to the Senate.  The grounds offered by Senate defendants on both the jurisdictional defenses and plaintiff's failure to state a claim present solely questions of law based on the allegations in the complaint and, therefore, are properly resolved in a motion to dismiss.  Senate

defendants' motion does not rely on any evidence outside of the complaint.  Furthermore, the

discovery plaintiff requests itself is barred by the Speech or Debate Clause privilege, as plaintiff

seeks literally to "question" a Senate committee about the reasons for its legislative activities,

which is at the heart of the Clause's protection.  Besides, such discovery is not relevant to the

Speech or Debate Clause issue, as courts do not look to the motivation or purpose of a legislative

act in determining whether it falls within the protection of the Clause.

Accordingly, the Court should grant Senate defendants' motion, dismiss plaintiff's

complaint, and deny Plaintiff's Cross-Motion for Partial Summary Judgment.[2]

## ARGUMENT

## I.      SENATE DEFENDANTS ARE IMMUNE FROM PLAINTIFF'S SUIT UNDER THE SPEECH OR DEBATE CLAUSE.

As explained in defendants' opening memorandum, Defs.' Memo. at 8-13, the Speech or

Debate Clause bars plaintiff's suit to compel the Senate defendants to produce to him the SSCI

Report.  Plaintiff's opposition counters that the Speech or Debate Clause privilege is not an

insuperable bar to his suit, but rather must be weighed against the public's interest in disclosure

of the Report under the common law right of access.  That argument fundamentally

misunderstands the absolute nature of the privilege provided by the Speech or Debate Clause and

the role that the Clause serves in securing legislative independence.

The Speech or Debate Clause is not a qualified or common law privilege, but an integral

and express mandate of the Constitution that "reinforc[es] the separation of powers" by

"insur[ing] that the legislative function the Constitution allocates to Congress may be performed

---

[2]  Plaintiff filed a cross-motion for partial summary judgment, ECF No. 15, supported by the consolidated memorandum opposing Defendants' Motion to Dismiss (Pl.'s Opp.). As the complaint is subject to dismissal as a matter of law on the grounds stated in the Motion to Dismiss, plaintiff's cross-motion should be denied on those same grounds.

independently." *Eastland*, 421 U.S. at 502; *see also McCarthy v. Pelosi*, 5 F.4th 34, 38 (D.C. Cir. 2021) ("The central object of the Speech or Debate Clause is to protect the independence and integrity of the legislature.") (internal quotation marks and citation omitted), *cert. denied*, 142 S.Ct. 897 (2022).  The Clause effectuates this purpose by providing an immunity from both criminal prosecution and private civil litigation, *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995), as well as "a testimonial and non-disclosure privilege" that protects Members and their staff "from being compelled to answer questions about legislative activity or produce legislative materials."  *Howard v. Office of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 946 (D.C. Cir. 2013); *see also Judicial Watch*, 998 F.3d at 992; *Brown & Williamson*, 62 F.3d at 420 ("A party is no more entitled to compel congressional testimony – or production of documents – than it is to sue congressmen.").

Given the importance of the Clause, the Supreme Court has "read the Speech or Debate Clause broadly to effectuate its purposes," and has interpreted the Clause's immunity to reach all actions "within the sphere of legitimate legislative activity."  *Eastland*, 421 U.S. at 501; *Judicial Watch*, 998 F.3d at 991 (Clause "extends to protect all 'legislative acts'") (quoting *Doe v. McMillan*, 412 U.S. at 312).  Thus, under well-established precedent, the SSCI Report, and the Committee's decision to release publicly only the Executive Summary and findings and conclusions of that Report, fall squarely within the legislative sphere protected by the Clause.

Pursuant to Senate rules, Senate committees conduct investigations of matters within their jurisdiction and then submit to the Senate reports of those investigations to support the legislative responsibilities and deliberations of the Senate.  Accordingly, committee reports are undoubtedly matters that involve "the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and

passage or rejection of proposed legislation or with respect to other matters which the

Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625; *see also*

*McCarthy*, 5 F.4th at 39. Indeed, the Supreme Court has specifically and consistently found

committee reports to be within the protection of the Speech or Debate Clause, *see Hutchinson v.*

*Proxmire*, 443 U.S. 111, 124-25 (1979) ("[W]e have held that committee hearings are protected,

even if held outside the Chambers; *committee reports* are also protected.") (emphasis added);

*Gravel*, 408 U.S. at 624 (stating that "voting by Members and *committee reports* are protected"

by Speech or Debate Clause) (emphasis added); *Doe v. McMillan*, 412 U.S. at 313, as plaintiff

himself concedes. *See* Pl.'s Opp. at 16. Accordingly, plaintiff's suit to compel disclosure of the

SSCI Report – that is, plaintiff's attempt to override the Committee's decision not to authorize

publication and distribution of the Report – is barred by the Speech or Debate Clause. *See Doe v.*

*McMillan*, 412 U.S. at 313 ("The acts of authorizing an investigation . . . , holding hearings . . . ,

preparing a [committee] report . . . , and *authorizing the publication and distribution of that*

*report* were all . . . protected by the Speech or Debate Clause.") (emphasis added).[3]

Plaintiff challenges this conclusion by arguing that the protections of the Clause must be

balanced against the public interest in disclosure and that "Committee reports are not all

---

[3] Plaintiff maintains that the cases cited by Senate defendants "only discussed Committee reports as the medium in which an objectionable statement was recorded," and, therefore, "did not stand for the principle for which SSCI cites them here, to say that a house of Congress cannot be compelled to release a Committee report if it would be considered a public record according to the common law right of access." Pl.'s Opp. at 16. That purported distinction – between protection from liability for statements in reports as opposed to protection from compelled disclosure – has been rejected by the D.C. Circuit in *Brown & Williamson*, 62 F.3d at 421, and again in *Judicial Watch*. *See* 998 F.3d at 992 ("That [plaintiff's] lawsuit seeks only the disclosure of public records, rather than to establish criminal or civil liability, does not render the Speech or Debate Clause inapplicable. To the contrary, [plaintiff] 'is no more entitled to compel . . . production of documents . . . than it is to sue congressmen.'") (internal quotation marks and citation in first sentence omitted; second sentence quoting *Brown & Williamson*, 62 F.3d at 421).

inherently covered by the Speech or Debate Clause[.]"  Pl.'s Opp. at 16.  The only authority

plaintiff offers to support this argument, *id.* at 15, is the concurring opinion of Judge Henderson

in *Judicial Watch*, that maintained that "the Clause should be considered in weighing the

interests for and against disclosure as part of the [common law right of access's] balancing test."

998 F.3d at 999; *see* Compl. ¶¶ 9-14; Pl.'s Opp. at 15.   But the concurrence's suggestion that

Speech or Debate Clause immunity should be balanced against the interests in disclosure was not

adopted by the majority, which simply held that the Clause barred suit asserting a common law

right of access to a House committee subpoena.  *See Judicial Watch*, 998 F.3d at 991-93.

    Moreover, the suggestion that the Clause's immunity should be balanced against common

law disclosure interests directly conflicts with long-standing Supreme Court and Circuit precedent

that clearly states that, where the Clause applies, "the prohibitions of the Speech or Debate Clause

are *absolute*."  *Eastland*, 421 U.S. at 501 (emphasis added); *see also Rangel v. Boehner*, 785 F.3d

19, 23 (D.C. Cir. 2015) (Clause provides "*absolute* immunity") (emphasis added); *United States

v. Rayburn House Office Bldg., Rm. 2113, Washington, D.C. 20515*, 497 F.3d 654, 660 (D.C. Cir.

2007) ("The bar on compelled disclosure is *absolute*") (emphasis added); *Brown & Williamson*, 62

F.3d at 416 ("legislative privilege is '*absolute*' where it applies'") (emphasis added); *MINPECO,

S.A. v. Conticommodity Services, Inc.*, 844 F.2d 856, 862 (D.C. Cir. 1988) ("Once the legislative

act test is met, the principle is *absolute*.") (emphasis added and internal quotation marks and

citation omitted).  The "absolute" nature of the privilege precludes any balancing of the Clause's

immunity against the public interest in disclosure under the common law right of access.

    In response, plaintiff disclaims any challenge to the absolute nature of the Speech or

Debate privilege, *see* Pl.'s Opp. at 16 (Plaintiff "is not challenging the assertion" that Speech or

Debate Clause privilege is absolute), though it is hard to square such a concession with his

argument that the Clause's protection must be balanced against the public's interest in disclosure.

Instead, plaintiff argues that the Clause may not apply at all here, because "Committee reports are

not all inherently covered by the Speech or Debate Clause in the first place."  *Id.*  Plaintiff

maintains that "[w]hether a particular Committee report is protected from compelled disclosure

by the Speech or Debate Clause . . . is a fact-dependent inquiry," that turns on whether the report

was "essential to Congressional deliberations" and whether "revealing the information [in the

report] would threaten Congressional integrity or independence by impermissibly exposing its

deliberations to executive influence."  Pl.'s Opp. at 17.  Plaintiff purports to derive his novel

two-part test from *Gravel*, where the Court found that Senator Gravel's receiving and placing the

Pentagon Papers in a subcommittee hearing record was protected legislative activity, but that the

Senator's arranging "private publication" of the Pentagon Papers with Beacon Press was not:

> [P]rivate publication by Senator Gravel through the cooperation of Beacon Press
> was in no way essential to the deliberations of the Senate; nor does questioning as
> to private publication threaten the integrity or independence of the Senate by
> impermissibly exposing its deliberations to executive influence. The Senator had
> conducted his hearings; the record and any report that was forthcoming were
> available both to his committee and the Senate.  Insofar as we are advised, neither
> Congress nor the full committee ordered or authorized the publication.  We cannot
> but conclude that the Senator's arrangements with Beacon Press were not part and
> parcel of the legislative process.

*Gravel*, 408 U.S. at 625-26.

As plaintiff himself recognizes, that passage addressed the publication of committee

material by a private publisher outside the legislative process and unauthorized by the Senate or a

Senate committee, which is in no way analogous to the issue here.  *See* Pl.'s Opp. at 17 (noting

passage is "in the context of republication").  The *Gravel* passage is simply inapposite to the

question of whether the Senate defendants are immune from his suit seeking to force them to

release the full official SSCI Report.  Indeed, just two pages prior to the language relied on by

plaintiff, the Court in *Gravel* made clear that "committee reports are protected" by the Speech or Debate Clause, *Gravel*, 408 U.S. at 624, a statement that *is* directly on point to plaintiff's claim.

Plaintiff also wrongly suggests, contrary to all authority, that "[s]ome Committee reports" are not covered by the Clause because they "are in effect ends unto themselves, where the writing of the report describing what was learned during the investigation is the end goal." Pl.'s Opp at 17. Such an argument misunderstands Senate committees and the role their investigations and reports play in the Senate's legislative process. As the Supreme Court has explained, Congress' investigatory power arises from and supports its legislative powers. *See McGrain v. Daugherty*, 273 U.S. 135, 175 (1927); *Eastland*, 421 U.S. at 504. On that basis, the Senate has authorized committees to undertake investigations and report their findings to the Senate, *see* Senate Rules XXV.1, XXVI.1, 7-8. Their reports inform and aid the Senate's legislative deliberations and, therefore, squarely fall within the Clause's protection.[4]

Plaintiff attempts to support his argument that the Report is not protected by the Clause by citing the *amicus curiae* brief of former Senator Rockefeller filed in *ACLU v. CIA*, 823 F.3d 655 (D.C. Cir. 2017), the FOIA suit seeking release of the full SSCI Report *from Executive agencies*. In his brief, Senator Rockefeller maintained that when the Committee provided the full SSCI Report to Executive agencies, the Committee did not intend to limit the agencies' use and

---

[4] No specific legislation need be identified to demonstrate the legislative character of a Senate committee report. *Cf. Barenblatt v. United States*, 360 U.S. 109, 111 (1959) ("The power of inquiry has been employed by Congress throughout our history, over the whole range of the national interests concerning which Congress *might legislate or decide upon due investigation not to legislate. . . .*") (emphasis added); *Eastland*, 421 U.S. at 509 ("Nor is the legitimacy of a congressional inquiry to be defined by what it produces. The very nature of the investigative function – like any research – is that it takes the searchers up some 'blind alleys' and into non-productive enterprises. To be a valid legislative inquiry there need be no predictable end result"). Even so, it may be noted that within a year of the Committee's submission to the Senate of its final Report, the Senate enacted legislation containing limitations on interrogation techniques used upon detainees. *See* National Defense Authorization Act for FY 2016, Pub. L. No. 114-92, § 1045 (2015).

dissemination of the Report.  *See* Pl.'s Opp. at 19 (quoting Brief of Amicus Curiae Senator John

D. Rockefeller IV [attached to Pl.'s Opp as Exh. C]).  Such an argument is irrelevant.  Senator

Rockefeller's *amicus* brief was addressed to the issue of whether the Report, *in the hands of*

*Executive agencies*, was an agency record subject to FOIA or a congressional record not covered by

FOIA; the lawsuit did not attempt to compel the Senate to release the Report.  The Speech or

Debate Clause was not at issue in *ACLU v. CIA*, and the brief sheds no light on that question.

Moreover, the court of appeals *rejected* the position of *amicus* Senator Rockefeller and found

that the Report was a congressional record not an agency record, and that "[w]hen [Committee

Chair] Senator Feinstein transmitted the draft of the Full Report to the Executive Branch on

December 14, 2012, her transmittal letter made it clear that the Committee would determine if

and when to publicly disseminate the Full Report."  *ACLU v. CIA*, 823 F.3d at 667.  Finally,

whether a committee makes a report available to the Executive Branch has no effect on the report's

role in the Senate's legislative process and does not impliedly waive the Speech or Debate Clause

privilege that precludes suit against a Senate committee to force disclosure of the report.[5]

Plaintiff argues similarly that the fact that Judge Lamberth ordered a copy of the SSCI

Report to be deposited with the District Court for use in pending Guantanamo Bay litigation

demonstrates that the Report is not privileged under the Clause, as Judge Lamberth "would not

have been able to do [so] if the Speech or Debate Clause prevented Congress from being forced

to release a Committee report to an entity to which it had not consented to release it."  Pl.'s Opp.

at 16.  Judge Lamberth's order directed the *Executive Branch* officials named as defendants in

---

[5]  Indeed, "[n]o court has ever held that a Representative or Senator waived their absolute immunity from suit under the Speech or Debate Clause."  *Rangel v. Boehner*, 20 F. Supp. 3d 148, 182 (D.D.C. 2013), *aff'd*, 785 F.3d 19 (D.C. Cir. 2015).  Waiver of the Speech or Debate Clause "can be found only after explicit and unequivocal renunciation of the protection."  *United States v. Helstoski*, 442 U.S. 477, 491 (1979).

that case to deposit a copy of the SSCI Report they possessed with the District Court.  *See* Order, ECF No. 268, *Al-Nashiri, et al. v. Bush, et al.*, No. 08-cv-1207 (D.D.C. Dec. 28, 2016).  It did not compel any disclosure from the Senate or the Committee, and thus did not implicate the Clause.

In sum, the SSCI Report, and the Committee's determination not to make the full report publicly available, are squarely part of the Senate's legislative processes within the core protection of the Speech or Debate Clause, and, therefore, plaintiff's suit seeking to force the Committee and its Chairman to provide him with a copy of the Report is barred by the Clause.

## II.     SOVEREIGN IMMUNITY PRECLUDES PLAINTIFF'S SUIT.

The defendants here, a government entity and a government official sued in his official capacity, partake of the sovereign immunity of the United States Government.  *See* Defs.' Memo. at 13-14.  Therefore, "[a]bsent a waiver," sovereign immunity shields the Senate defendants from plaintiff's suit, *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), and any "waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, . . . will not be implied, [and] . . . will be strictly construed, in terms of its scope, in favor of the sovereign."  *Lane v. Pena*, 518 U.S. 187, 192 (1996).

Plaintiff fails to identify any waiver of sovereign immunity that would give this Court jurisdiction to hear his suit.  None of the statutes cited in plaintiff's complaint – the general federal question statute, 28 U.S.C. § 1331, the Mandamus Statute, 28 U.S.C. § 1361, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, or the All Writs Act, 28 U.S.C. § 1651 – provides a waiver of Federal sovereign immunity.  *See* Defs.' Memo at 14-16; *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) ("Neither the general federal question statute [28 U.S.C. § 1331] nor the mandamus statute [28 U.S.C. § 1361] by itself waives sovereign immunity."); *WLF II*, 89 F.3d 897, 901 (D.C. Cir. 1996) (stating that it is "well settled" that Mandamus Statute, 28 U.S.C.

§ 1361, "does not by itself waive sovereign immunity"); *Stone v. Dep't of Housing and Urban Dev.*, 859 F. Supp. 2d 59, 63-64 (D.D.C. 2012) (explaining that neither 28 U.S.C. § 1331 nor Declaratory Judgment Act, 28 U.S.C. § 2201, waives sovereign immunity); *Buaiz v. United States*, 471 F. Supp. 2d 129, 138 (D.D.C. 2007) (finding that neither federal question statute, 28 U.S.C. § 1331, Mandamus Act, 28 U.S.C. § 1361, nor All Writs Act, 28 U.S.C. § 1651, waives federal sovereign immunity);  *Holt v. Davidson*, 441 F. Supp. 2d  92, 96 (D.D.C. 2006).

Lacking any statutory waiver, plaintiff relies on the *Larson-Dugan* exception to sovereign immunity to establish jurisdiction for his suit.  *See* Pl.'s Opp. at 2-3.  However, the Supreme Court and the D.C. Circuit have made clear that "the [*Larson-Dugan*] exception" applies in two types of cases only: "suits for specific relief against officers of the sovereign allegedly acting [1] beyond statutory authority or [2] unconstitutionally."  *Pollack v. Hogan*, 703 F.3d 117, 120 (D.C. Cir. 2012) (internal quotation marks omitted); *see also Dugan v. Rank*, 372 U.S. 609, 621-22 (1963).  As defendants explained, *see* Defs.' Memo. at 16-19, plaintiff's common law claim does not qualify for either ground of the *Larson-Dugan* exception because the complaint does not and cannot allege either that the Senate defendants acted beyond their statutory powers or that they acted unconstitutionally.  *See Maynard v. Architect of the Capitol*, 544 F. Supp. 3d 64, 81 (D.D.C. 2021) (finding that plaintiff's claim under Mandamus Act did not qualify for *Larson-Dugan* exception to sovereign immunity, as "the plaintiff has identified no statutory source of authority that limits the defendant's actions," but rather relies on a duty imposed on the defendant by its human resource manual, which "is not a statute.").

Plaintiff's opposition argues against this conclusion by referencing this Court's decision in *Judicial Watch*, 474 F. Supp. 3d at 311-14, and the D.C. Circuit's decision in *WLF II*, 89 F.3d at 901-02, holding that the *Larson-Dugan* exception merged the question of sovereign immunity

with the merits of the common law right of access, and depended on whether the defendants

owed a non-discretionary legal duty enforceable under the Mandamus Statute.[6]  Plaintiff

incorrectly asserts that Senate defendants' argument must fail in light of those decisions as it

"offers nothing new to the existing analysis."  Pl.'s Opp. at 5.

        To the contrary, unlike in those previous cases, Senate defendants provided case law

demonstrating that the statutory ground relied on in *WLF II* and *Judicial Watch* for applying the

*Larson-Dugan* exception – the Mandamus Statute, 28 U.S.C. § 1361 – applies *only* to Executive

branch officials and *not* to committees or Members of Congress.  *See* Defs.' Memo. at 15; *United

States v. Choi*, 818 F. Supp. 2d 79, 84 (D.D.C. 2011) ("§ 1361 is only a source of jurisdiction for

district courts to exercise writs of mandamus to employees of the *Executive* branch.") (citing cases);

*Howard v. U.S. District Court for D.C.*, No. 10-1114, 2010 WL 2639960, at *1 (D.D.C. June 30,

2010) ("[T]the mandamus statute [28 U.S.C. § 1361] applies to . . . matters arising in the executive

branch and its administrative agencies.") (internal quotation marks and citation omitted); *see also

Trackwell v. United States Government*, 472 F.3d 1242, 1247 (10th Cir. 2007); *Liberation News

Service v. Eastland*, 426 F.2d 1379, 1384 (2d Cir. 1970) ("[I]n enacting [ ] § 1361 . . . Congress

was thinking solely in terms of the executive branch."); *Semper v. Gomez*, 747 F.3d 229, 250-51

(3d Cir. 2014).  As 28 U.S.C. § 1361 does not apply to Senate defendants, it cannot provide the

statutory limit necessary to trigger the *Larson-Dugan* exception; neither of the prior decisions

plaintiff relies on addressed the inapplicability of 28 U.S.C. § 1361 to Congress and its Members.

        Lacking a statutory limitation ground for invoking *Larson-Dugan*, plaintiff's complaint

---

        [6] Senate Defendants' memorandum expressly recognized the sovereign immunity
decisions in *Judicial Watch* and *WLF II*.  *See* Defs.' Memo. at 16.  In *Judicial Watch*, the court of
appeals affirmed the dismissal of the complaint for lack of jurisdiction on Speech or Debate
Clause grounds without addressing sovereign immunity. *See Judicial Watch*, 998 F.3d at 993.

presents only a bare common law claim that, standing on its own, simply cannot satisfy *Larson-Dugan* – otherwise that "exception" would effectively function as a blanket waiver of all non-monetary claims of any kind against any branch of the federal government.  Such a conclusion has never been adopted by the Supreme Court and would signify a novel and substantial departure from sovereign immunity law as it applies to the federal government.

Finally, plaintiff cites to three state cases, a 1915 case and a 1937 case from Texas and a 1977 case from Vermont, to argue that "[s]overeign immunity is generally not discussed in" state common-law-right-of access-to-public-record cases and "hardly features at all in state-level jurisprudence, presumably because the nature of the right itself is considered an implicit waiver of sovereign immunity."  Pl.'s Opp. at 6.  Yet, state cases addressing whether a given state's sovereign immunity did or did not bar a state common-law-right-of-access suit has no bearing on whether the federal government has waived the sovereign immunity of the Senate and its committees to such claims.  As to that question, clear Supreme Court precedent rejects plaintiff's suggestion that the common law right provides an "implicit waiver" of federal sovereign immunity; rather, any such waiver must be "*unequivocally expressed*" in statute.  *See Lane*, 518 U.S. at 192 (emphasis added); *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1105 (D.C. Cir. 2005).  All the historical *state* citations plaintiff can muster provide no legal ground to circumvent established *federal* sovereign immunity law and permit an implicit waiver of Senate defendants' immunity based on a common law claim.[7]

---

[7]  Plaintiff's opposition notes that in both *Schwartz v. U.S. Dep't of Justice*, 435 F. Supp. 1203 (D.D.C. 1977), and *Pentagen Techs. Int'l, Ltd. v. Committee on Appropriations, U.S. House of Representatives*, 20 F. Supp. 2d 41 (D.D.C. 1998), where plaintiffs sought congressional documents under the common law right of access, the congressional defendants "noticeably failed to even mention sovereign immunity," Pl.'s Opp. at 4, and the opinions accordingly did not address that jurisdictional issue.  Such silence, however, does not preclude raising the jurisdictional
(continued...)

III.    **PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER THE COMMON LAW RIGHT OF ACCESS TO PUBLIC RECORDS.**

      A.    **Documents of a House of Congress Are Not Subject to the Common Law Right of Access to Public Records.**

Senate Defendants maintain that the common law right of access to public records does not apply to the records of the House or Senate.  While Senate defendants recognize that the D.C. Circuit has stated that the common law right of access applies to all three branches, *see WLF II*, 89 F.3d at 903 (citing *Schwartz*, 435 F. Supp. at 1203); *Center for National Security Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 936 (D.C. Cir. 2003), the court of appeals has never applied the doctrine to documents of the House or Senate, and hence it remains an open issue for this Court.[8]  As explained in the opening memorandum, *see* Defs.' Memo. at 21-25, applying the common law doctrine to the documents of the Senate conflicts with the constitutional powers vested in each House of Congress by the Journal and Rulemaking Clauses of the Constitution, art. I, § 5, cls. 2-3, as well as affirmations by the D.C. Circuit recognizing Congress's authority over its documents pursuant to those constitutional provisions and the separation of powers.

Plaintiff seeks to apply the common law right to Congress and argues that the common law right of access is not superseded by the Journal and Rulemaking Clauses, nor can it be "displaced" by Senate rules.  Pl.'s Opp. at 7-11.  First, plaintiff asserts, citing Justice Story's commentaries on the Constitution, that while the Journal Clause expressly provides that each

---

[7](...continued)
defense in this case, nor do those rulings create any precedent on the sovereign immunity question.  As the Supreme Court has stated, "[w]hen a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed."  *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011).

[8]  While this Court applied the doctrine to congressional documents in *Judicial Watch*, 474 F. Supp. at 314, the court of appeals did not reach the question in affirming the dismissal in that case for lack of jurisdiction.  *See Judicial Watch*, 998 F.3d at 993.

House may determine what matters to keep secret, the Clause's "goal was *transparency*, and the secrecy part . . . the *exception*." Pl.'s Opp. at 8 (citing 1 J. Story, Commentaries on the Constitution of the United States § 840 (4th ed. 1873)). Yet, plaintiff's assertion itself concedes that Congress *does* have authority to keep records secret under the Journal Clause; it merely suggests that such authority would be used sparingly. And it is – the vast majority of Senate committee reports, floor proceedings, and hearings are publicly available, and only a very limited number remain confidential for important reasons, such as when they contain national security classified material. The Journal Clause does not specify which of Congress' records shall be made public; rather, it plainly vests that decision with each House: " . . . excepting such Parts as may *in their Judgment* require Secrecy." U.S. Const. art. I, § 5, cl. 3 (emphasis added). Justice Story's comments do not undermine the conclusion that the Constitution's Journal Clause supersedes the common law right of access with regard to Congress's own documents and gives the House and Senate each the sole authority to determine which of their respective records "in their Judgment require Secrecy."

Indeed, relying on the Journal Clause and established understandings of Congress's authority, the D.C. Circuit has affirmed that "Congress has undoubted authority to keep its records secret, authority rooted in the Constitution, longstanding practice, and current congressional rules." *Goland*, 607 F.2d at 346 (citing Journal Clause, U.S. Const. art. I, § 5, cl. 3) (footnotes omitted); *United We Stand America, Inc. v. IRS*, 359 F.3d 595, 599 (D.C. Cir. 2004) (noting that D.C. Circuit in *Goland* had "emphasiz[ed] Congress' right to keep its own materials confidential" referencing Congress's "constitutional prerogative of maintaining secrecy" of its records) (quoting *Goland*, 607 F.2d at 346); *ACLU v. CIA*, 823 F.3d at 663. Plaintiff offers no argument as to how the common law right of access can prevail over the D.C. Circuit's repeated recognition that Congress has "undoubted authority . . . rooted in the Constitution" to keep its records secret.

Plaintiff also discounts Senate defendants' reliance on the authority granted by the Rulemaking Clause, arguing that rules governing congressional documents are internal and not "*externally* binding," and, thus, cannot block the application of the common law right of access. *See* Pl.'s Opp. at 8.  But the Senate rules governing access to records, enacted under the Rulemaking Clause, *are* binding on the public.  As Senate defendants explained in their opening memorandum, Senate rules governing Senate records, including resolutions that control the archiving and access to records held at the National Archives, limit public access to those records.  *See* Defs.' Memo. at 23 (citing Senate Rule XI.2; S. Res. 474, 96th Cong. (1980), *reprinted in* S. Doc. No. 116-1, at 194-96 (2020)); *In re Shepard*, 800 F. Supp. 2d 37, 40-41 (D.D.C. 2011) ("The U.S. Senate and House of Representatives determine the rules of access to congressional records held by NARA.").  Such limitations on access to Senate records, even records held at the National Archives, exemplify the Rulemaking Clause's conferral of binding authority on Congress to limit public access to its records.  As this District Court has stated:

> Decisions regarding public access to congressional records are properly committed to Congress. The judiciary has never asserted the institutional competence to make such decisions, and there is no principled basis for doing so here. The Senate and House rules plainly do not permit access to the requested records at this time.

*In re Shepard*, 800 F. Supp. 2d at 41.[9]

In addition to the specific authorities vested in the Senate by the Journal and Rulemaking

---

[9]  Plaintiff attempts to distinguish the cases cited by Senate defendants holding that Federal Rule of Criminal Procedure 6(e) displaced any common law right of access to records of grand juries, *see In re Motions of Dow Jones & Co.*, 142 F.3d 496, 504 (D.C. Cir. 1998); *McKeever v. Barr*, 920 F.3d 842, 848-49 (D.C. Cir. 2019), by arguing that the Federal Rules of Criminal Procedure, unlike Senate rules, are promulgated pursuant to authority granted by statute, the Rules Enabling Act, 28 U.S.C. § 2072.  *See* Pl.'s Opp. at 8.  Yet, the Senate rules governing access to Senate records are promulgated pursuant to express authority granted the Senate by the *Constitution*, and such constitutional authority, as much as any statutory authority, can supersede the application of a common law right.

Clauses, the separation-of-powers doctrine reinforces the Senate's sole control over its own proceedings and papers in order to enable it to carry out its constitutional duties independent from the other Branches.   Unlike when the Judiciary applies the common law right to allow access to its own records, judicial application of that common law doctrine to compel disclosure of Congress's records presents serious separation-of-powers concerns of encroachment into the powers of a coequal branch.   *See Harrington v. Bush,* 553 F.2d 190, 214 (D.C. Cir.1977) (citing Rulemaking Clause and stating that "[i]n deference to the fundamental constitutional principle of separation of powers, the judiciary must take special care to avoid intruding into a constitutionally delineated prerogative of the Legislative Branch"); *see also Loving v. United States*, 517 U.S. 748, 757 (1996) ("[I]t remains a basic principle of our constitutional scheme that one branch of the Government may not intrude upon the central prerogatives of another," nor "impair another in the performance of its constitutional duties").

Finally, plaintiff's opposition spends substantial time arguing two inapposite points: (1) that FOIA did not displace the common law right of access as applied to the Legislative Branch, and (2) that many states have recognized the continued viability of state common law rights of access to public records even after enacting state freedom of information laws.   *See* Pl.'s Opp. at 11-15.   First, as plaintiff himself recognizes, *see id.* at 11, Senate defendants never argued that FOIA displaced the common law right of access as applied to Congress, nor did they take issue with whether such a common law cause of action could coexist with FOIA.   Rather, Senate defendants have argued that whatever the scope of the common law right of access, it does not apply to documents of the Senate and House in light of the constitutional powers granted to Congress in the Journal and Rulemaking Clauses, the separation of powers between the branches, and the D.C. Circuit's recognition of Congress's authority over its documents.   Second, state

court cases regarding whether a state's freedom of information statute displaces a *state* common law right of access *under state law* simply do not bear on any arguments of Senate defendants nor on whether a *federal* common law right applies to Senate records.

Accordingly, the Court should dismiss plaintiff's claim of a common law right to confidential Senate records.

### B.     The Common Law Right of Access Does Not Require Disclosure of the SSCI Report.

Even if the common law right of access did apply to some Senate records, the SSCI Report would not be subject to disclosure under that doctrine.  As discussed in Senate defendants' opening memorandum, *see* Defs.' Memo. at 25-26, not every government document is subject to the common law right of access.  "There is, for instance, no [common law] right of access to 'documents which have traditionally been kept secret for important policy reasons.'"  *In re Motions of Dow Jones & Co.*, 142 F.3d at 504 (quoting *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989)).  In such areas, where the government's interest in secrecy categorically outweighs the public interest in disclosure, the common law right gives way as a matter of law.  One area where documents "have traditionally been kept secret for important policy reasons" is national security.  *See Dhiab*, 852 F.3d at 1094 ("[F]rom the beginning of the republic to the present day, there is no tradition of publicizing secret national security information involved in civil cases, or for that matter, in criminal cases.  The tradition is exactly the opposite.") (internal footnotes and citations omitted).  The D.C. Circuit has held that "the government 'has a *compelling* interest in protecting . . . the secrecy of information important to our national security . . . .'"  *Id.* at 1098 (quoting *McGehee v. Casey*, 718 F.2d 1137, 1143 (D.C. Cir. 1983)).  The D.C. Circuit has found that the compelling interest in protecting the secrecy of national security information outweighs

any countervailing public interest in disclosure under the common law right of access.  As the court of appeals stated, "[t]he law of this circuit is that the need to 'guard against risks to national security interests' overcomes a common-law claim for access." *Dhiab*, 852 F.3d at 1098 (quoting *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980)).

Plaintiff responds that balancing the interests for and against disclosure is "far more nuanced in this case than SSCI implies."  Pl.'s Opp. at 20.[10]  Yet, under *Dhiab*, the question is not "nuanced"; rather, "the law of this circuit" is that the vital national security interests implicated in classified documents, interests plaintiff does not and cannot challenge, overcome any common law claim to those documents.  *See Dhiab*, 852 F.3d at 1098 ("Because keeping the [classified] recordings sealed is narrowly tailored to protect the government's compelling interest in guarding national security, intervenors *cannot prevail* on their common-law claim.") (emphasis added).

Plaintiff incorrectly claims that the Senate defendants' motion made "the aggressive argument that there is no interest in public disclosure of the classified Torture Report because the Executive summary and the Findings and Conclusions have been released."  Pl.'s Opp. at 20. The Senate defendants did not argue that there is *no* interest in public disclosure of the full Report, but rather that, because "the Report's Findings and Conclusions and 500-page Executive Summary have been declassified and released publicly, with minimal redactions," the public has been provided with "substantial information on the Committee's study and findings," and therefore, "whatever additional benefit to the public interest might be gained from releasing the

---

[10]  Plaintiff's contention that the balancing of interests here is "nuanced," along with his admission that "some of these issues [in this case] may be close calls," Pl.'s Opp. at 21, further undermine his claim to mandamus relief, because the "drastic" remedy of mandamus is "to be invoked only in extraordinary circumstances" and only when the party seeking mandamus can show that "its right to issuance of the writ is clear and indisputable."  *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002).

full Report cannot outweigh the government's compelling interest in maintaining its

confidentiality."  Defs.' Memo. at 27-28.  Plaintiff has the burden to articulate the additional

benefit that releasing the full Report would provide and how that would outweigh the interest in

confidentiality of the Report, and his opposition does not do so.[11]  Indeed, plaintiff's opposition

fails even to attempt to elucidate the interests in that additional disclosure or how they outweigh

the government's interest in secrecy.

Plaintiff further maintains that his suit does not seek to compel disclosure of the full

classified report, but merely that the Committee be ordered "to disclose to him *the releasable*

*portions* of the full Report," Pl.'s Opp. at 20, and that he "is simply attempting to compel . . . a

declassification review."  *Id.*; *but see* Compl. at 12, Prayer for Relief ("Plaintiff Musgrave prays

that this Court . . .  Order Defendants Warner and SSCI to provide the Torture Report to him").

Yet, plaintiff does not point to any legal authority that authorizes the Court to order the Senate or

one of its committees to request, let alone command, a declassification review from the

Executive Branch for a congressional committee report.  Directing the actions of a congressional

committee related to such classification determinations would constitute an unprecedented

intrusion into Legislative Branch activities in disregard of the separation of powers.  *See Hearst*

*v. Black*, 87 F.2d 68, 71 (D.C. Cir. 1936) ("[T]he universal rule, so far as we know it, is that the

legislative discretion in discharge of its constitutional functions, whether rightfully or wrongfully

exercised, is not a subject for judicial interference.").  Moreover, plaintiff's new request that the

---

[11]  Plaintiff's complaint does assert that the "[t]he damage of the Report's continued
secrecy is already being done as more and more high-level [government] officials are not only
not required to read the Report but could not read it even if they wanted to."  Compl. ¶ 33.  But
the common law right of access weighs the *public's* interest in disclosure, *see WLF II*, 89 F.3d at
902; *Judicial Watch*, 474 F. Supp. 3d at 314; it does not weigh any interest of government
officials in broader dissemination within the government.

Court order the Senate defendants to request a declassification review is inconsistent with the claim that he has a common law right to the document because it is a *public* record.  How can such a right apply to a 6,700 page document that plaintiff concedes cannot be made public until after a massive declassification review?  There is no legal basis in the common law right of access, consistent with the separation of powers, that authorizes a court to order a coordinate branch of government, the Senate, to request that another coordinate branch, the Executive, engage in a declassification review under court oversight in order to provide a document to a private party.[12]

IV.    **SENATE DEFENDANTS' MOTION ASSERTS LEGAL GROUNDS APPROPRIATE FOR RESOLUTION IN A MOTION TO DISMISS, AND PLAINTIFF'S REQUEST FOR DISCOVERY IS NEITHER RELEVANT NOR PERMITTED BY THE SPEECH OR DEBATE CLAUSE PRIVILEGE.**

Plaintiff contends that "if SSCI wishes to receive a ruling that the Torture Report is not subject to the common law right of access, it must do so through a summary judgment motion supported by evidence. Alternatively, the Court should authorize limited discovery into the Torture Report to determine the plausibility of Musgrave's claims."  Pl.'s Opp. at 2.  Neither assertion has any merit.

First, a motion to dismiss for failure to state a claim is an appropriate vehicle for determining that the SSCI Report is not subject to the common law right of access.  Senate defendants do not argue that plaintiff's claims are "implausible," but that they are wrong as a matter of law.  Senate defendants' motion maintains that the common law right does not apply to documents of a House of Congress, and therefore, that plaintiff's suit does not state a claim for

---

[12]  Such requested relief also would raise standing issues, as the relief requested would depend on discretionary action by a third party – Executive officials – not before the Court, as only the Executive has declassification authority.

relief as a matter of law.  In addition, Senate defendants argue that the national security interests

in the Report demonstrated by its classified status outweighs any interest in disclosure pursuant

to D.C. Circuit precedent.  Both arguments present questions of law based only on the complaint's

allegations and are properly determined in a motion to dismiss. Senate defendants did not present,

nor do they ask the Court to consider, any evidence outside of the complaint to resolve the legal

issues raised in their motion.[13]  Therefore, it is entirely appropriate for the Court to dismiss the

complaint on the legal grounds offered by Senate defendants in their motion.  *See Judicial Watch*,

474 F. Supp. 3d at 314-16 (granting motion to dismiss based on holding that "plaintiff has no right

to disclosure of these [House committee] subpoenas under the common-law right of access").[14]

Second, plaintiff's suggestion that he be allowed to pursue discovery from Senate

defendants, Pl.'s Opp. at 21-22, is both unnecessary to resolving defendants' motion to dismiss

and, anyway, barred by the Speech or Debate Clause.  As just mentioned, the grounds for

dismissal of this case based on the defenses set forth in the motion to dismiss are appropriate to

address without any factual development.  Moreover, just as the Speech or Debate Clause

---

[13]  That the full SSCI Report remains classified is mentioned in the complaint, Compl. ¶ 21, accepted in plaintiff's opposition, Pl.'s Opp. at 20, and stated in the Executive Summary of the Committee Report, which is cited in the complaint and appropriately considered a part thereof and also subject to judicial notice.  *See* S. Rep. No. 113-288, at 2 (2014) ("The full Committee Study . . . remains classified but is now an official Senate Report."); *see also Stewart v. Nat'l Education Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) ("In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice.").

[14]  Of course, a motion to dismiss is an appropriate means to assert lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) based on the Speech or Debate Clause and sovereign immunity grounds presented by Senate defendants.  *See, e.g.*, *Porteous v. Baron*, 729 F. Supp. 2d 158, 160, 167 (D.D.C. 2010) (granting motion to dismiss for lack of subject matter jurisdiction because Speech or Debate Clause barred the suit); *Smith v. Scalia*, 44 F. Supp. 3d 28, 35-40 (D.D.C. 2014) (granting motion to dismiss under Fed. R. Civ. P. 12(b)(1) on sovereign immunity grounds), *aff'd*, 2015 WL 13710107 (D.C. Cir. Jan. 14, 2015).

precludes plaintiff's suit seeking to compel production of the full SSCI Report, *see supra* at 4-11; Defs.' Memo. at 8-13, the Clause also precludes seeking any compelled information, either through documents or testimony, from Senators and staff[15] with regard to their legislative activities that support or relate to the Report. *See Howard*, 720 F.3d at 946 (Clause protects Members and staff "from being compelled to answer questions about legislative activity or produce legislative materials," including regarding "staff members' preparations for legislative activities"); *Brown & Williamson*, 62 F.3d at 418-21; *MINPECO, S.A.*, 844 F.2d at 859 (quashing subpoena on Speech or Debate Clause grounds, noting that "[d]iscovery procedures can prove just as intrusive" to Members and staff as a lawsuit).

Plaintiff states that the evidence he would seek through discovery – including document requests, interrogatories, and "targeted depositions" – "would be limited to information about the purpose of the Torture Report and the exchanges SSCI had with the Executive Branch about it[.]" Pl.'s Opp. at 22. Yet, the Clause protects Members and staff from just such an inquiry into the purposes or motivations behind a committee investigation or report. *See Helstoski*, 442 U.S. at 489 ("The Clause protects 'against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.'") (quoting *United States v. Brewster*, 408 U.S. 501, 525 (1972)); *McSurely v. McClellan*, 521 F.2d 1024, 1032 (D.C. Cir. 1975).

Plaintiff's requested discovery is also not relevant to the Speech or Debate Clause issue. A committee's "purpose" or "motivation" in issuing a report of an investigation does not alter the legislative nature of its acts and, thus, cannot diminish or remove the protections of the Clause.

---

[15]  Speech or Debate Clause protection "applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself." *Gravel*, 408 U.S. at 618; *see also Eastland*, 421 U.S. at 507; *McCarthy*, 5 F.4th at 39 ("[I]t is well established that the Clause's protections extend to Congressional aides and staff."); *Rangel*, 785 F.3d at 23.

*See Barenblatt*, 360 U.S. at 132-33 ("So long as Congress acts in pursuance of its constitutional power," as it has here, "the Judiciary lacks authority to intervene on the basis of the motives which spurred the exercise of that power."); *Watkins v. United States*, 354 U.S. 178, 200 (1957) ("Testing the motives of committee members" to determine if there is a legislative purpose "is not [the Court's] function."); *see also Eastland*, 421 U.S. at 508 ("Our cases make clear that in determining the legitimacy of a congressional act we do not look to the motives alleged to have prompted it.").  In addition, while SSCI's communications with the Executive Branch were pertinent to establishing that the SSCI Report was a congressional record for purposes of FOIA, *see ACLU v. CIA*, 823 F.3d at 343-51, they are not relevant to whether the common law right of access requires the Committee to release the record here.

Accordingly, the Court should reject plaintiff's request to take discovery from the Senate defendants.[16]

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss, the Court should grant the motion and dismiss plaintiff's complaint and deny Plaintiff's Cross-Motion for Partial Summary Judgment.

Respectfully submitted,

/s/ Patricia Mack Bryan
Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

---

[16]   As an alternative to discovery, plaintiff suggests that the Court could hold a hearing and take testimony on the jurisdictional issues.  *See* Pl.'s Opp. at 21-22.  Just as the Speech or Debate Clause prohibits the party discovery plaintiff requests, however, it equally protects Members and staff from compelled questioning by the Court on those issues.  *See McCarthy*, 5 F.4th at 38 ("The Clause prevents 'intimidation of legislators by the Executive and accountability before a possibly hostile judiciary.'") (quoting *Gravel*, 408 U.S. at 617).

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel), (202) 224-3391 (fax)

Dated: April 27, 2022                    Attorneys for Defendants