**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHAWN MUSGRAVE, | |
| Plaintiff, | Civil Action No. 21-cv-2198 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| MARK WARNER, *et al.,* | |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiff Shawn Musgrave asserts that the common-law right to public access requires defendants, the Senate Select Committee on Intelligence ("SSCI" or "Committee") and Mark Warner, in his capacity as the Chair of SSCI, to disclose, in full, the classified 2014 Senate Report 113-288, *Report of the Senate Select Committee on Intelligence Committee Study of the Central Intelligence Agency's Detention and Interrogation Program* ("the Report"). *See generally* Compl., ECF No. 1.[1]  According to plaintiff, defendants' failure to produce, upon requested, the classified Report violates the common-law right of public access "to inspect and copy public records and documents." *Id.* ¶ 7.  Defendants move to dismiss the Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defs.' Mot. Dismiss ("Defs.' Mot."), ECF No. 5, arguing that the Speech or Debate Clause and sovereign immunity bars the exercise of jurisdiction here and that no valid claim is presented, Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem.") at 1–2, ECF No. 5-1.  Plaintiff moves for partial summary judgment

---

[1]      All references to the parties' briefs and associated exhibits reflect the enumeration generated automatically by the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

seeking "a declaratory judgment that the common law right of access applies to reports written by Committees of the U.S. Congress in appropriate circumstances."  Pl.'s Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n") at 1, ECF No. 14; *accord* Pl.'s Mot. Partial Summ. J., ECF No. 15.  For the reasons explained below, defendants' motion is granted for lack of jurisdiction, requiring dismissal of the Complaint without prejudice.

## I.      BACKGROUND

In December 2007, after a briefing from then-CIA Director Michael Hayden, the Committee ordered a review of the destruction of videotapes related to CIA interrogations of specific individuals.  Report, Executive Summary at 8 (background on the Report);[2] Defs.' Mem. at 4.  That review proved extensive and led SSCI to deepen its evaluation into the destruction of videotapes related to CIA interrogations, which revealed that a broader study of the CIA's detention and interrogation program at large was needed.  *Id.*  Consequently, on March 5, 2009, "against [the] backdrop [of September 11, 2001]—the largest attack against the American homeland in our history," Compl. ¶ 17—SSCI approved a study into the CIA's former program of detention and interrogation techniques with instructions that this examination be used "as broadly as appropriate to help make sure that this experience is never repeated," *id*. ¶ 26; *see* Report at 8.  SSCI's study resulted in a report more than 6,700 pages long with approximately 38,000 footnotes, that is "highly critical" of the CIA's response to 9/11 and the agency's actions taken "in the name of national security."  Compl. ¶¶ 16–18.  The classified report, Senate Report 113-288, was approved by SSCI on December 13, 2012.  *See* Report at i.  Senator Dianne

---

[2]      Citations to the Report throughout this Opinion reference the publicly released, redacted version of the classified Report, available at Press Release, U.S. Senate Select Comm. on Intel., Comm. Releases Study of the CIA's Det. and Interrogation Program (Dec. 9, 2014), http://www.intelligence.senate.gov/press/committee-releases-study-cias-detention-and-interrogation-program.

Feinstein, then-Chair of SSCI, described the Report as "the most significant and comprehensive oversight report in [SSCI's] history."  Compl. ¶ 23; *accord* Report, Foreword at 5.

On December 9, 2014, the full Report was ordered to be printed and the 700-page declassified Executive Summary, Findings and Conclusions, and Additional and Minority Views were released to the public.  *Id.* ¶ 16; *see also* Press Release, U.S. Senate Select Committee on Intelligence, Committee Releases Study of the CIA's Detention and Interrogation Program (Dec. 9, 2014), http://www.intelligence.senate.gov/press/committee-releases-study-cias-detention-and-interrogation-program.  According to plaintiff, Senator Feinstein did not seek immediate declassification of the full Report because doing so for the "more than six thousand page report would have significantly delayed the release of the Executive Summary."  Compl. ¶ 21; *accord* Report, Foreword at 3.  Plaintiff contends that "[a]lthough the Executive Summary provides sufficient detail to demonstrate the inaccuracies of each of the CIA's claims," the Report provided to the President and executive agencies "is far more extensive."  Compl. ¶ 20 (internal citations omitted).

On January 14, 2015, Senator Richard Burr, Senator Feinstein's successor as Chair of SSCI, requested that "all copies of the full and final report in the possession of the Executive Branch be returned immediately to the Committee."  *ACLU v. CIA*, 823 F.3d 655, 661 (D.C. Cir. 2016); *see also* Compl. ¶ 27.  Many executive-branch departments complied with Senator Burr's request, *see id.* ¶ 29, and the Trump administration later provided the White House's copies of the Report, *see id.* ¶ 30, but two copies were not returned to SSCI.  Copies of the Report are maintained by the National Archives and Records Administration, as part of President Obama's official presidential archive, and by a federal district court and the Department of Defense pursuant to Judge Lamberth's order of preservation in connection with pending Guantanamo Bay

litigation.  *Id.* ¶ 28; *see also Al-Nashiri v. Obama*, No. 08-cv-1207, Preservation Order, ECF No. 268 (D.D.C. Dec. 28, 2016).  According to plaintiff, the return of the Report by executive agencies "increase[d] the risk that future government officials, unable to read the report, will never learn its lessons."  Compl. ¶ 30.

On June 4, 2021, plaintiff requested from SSCI a copy of the full Report because of the significant "public interest in disclosure," *id.* ¶ 15, of a "critical piece of American history," *id.* ¶ 34.  SSCI denied his request.  *Id.* ¶ 37.  Plaintiff then filed this lawsuit on August 18, 2021, against SSCI and its current Chair, Senator Mark Warner, asserting a claim under the common-law right of access to public records, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the All Writs Act, 28 U.S.C. § 1651.  Compl. at 1.

Defendants' pending motion to dismiss and plaintiff's cross-motion for partial summary judgment are now ripe for review.

## II.    LEGAL STANDARD

"Article III of the Constitution prescribes that '[f]ederal courts are courts of limited subject-matter jurisdiction' and 'ha[ve] the power to decide only those cases over which Congress grants jurisdiction.'"  *Bronner v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020) (alterations in original) (quoting *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012)); *see Gunn v. Minton,* 568 U.S. 251, 256 (2013) ("'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by [the] Constitution and statute.'" (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))).  Federal courts therefore have a corresponding "independent obligation to ensure that they do not exceed the scope of their jurisdiction" and "must raise and decide jurisdictional questions that the parties either overlook or elect not to press."  *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).  Absent

subject-matter jurisdiction over a case, the court must dismiss it.  *See Arbaugh v. Y&H Corp.*,
546 U.S. 500, 506–07 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)); FED. R. CIV.
P. 12(h)(3).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the
plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over the claim
at issue.  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  When considering a motion to
dismiss under Rule 12(b)(1), the court must determine jurisdictional questions by accepting as
true all uncontroverted material factual allegations contained in the complaint and "'constru[ing]
the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from
the facts alleged.'"  *Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 281 (D.C. Cir. 2022) (quoting *Am.
Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citations omitted)).  The court
need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported
by facts alleged in the complaint or amount merely to legal conclusions.  *Id.* at 288 (making clear
that liberally construing complaint in plaintiff's favor "does not entail accept[ing] inferences
unsupported by facts or legal conclusions cast in the form of factual allegations" (internal
quotations and citations omitted)); *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir.
2002).

## III.    DISCUSSION

Defendants argue that the Court lacks jurisdiction over this case for two reasons: first,
"the SSCI Report constitutes a Senate committee's communication to the Senate on a matter
within the legislative sphere, and, therefore, the Committee and its Chairman are absolutely
protected from compelled disclosure of the Report by the Speech or Debate Clause," Defs.'
Mem. at 8; and, second, "[b]oth SSCI, as a congressional committee, and Senator Warner, as a

Senator and as the Chairman of SSCI sued in his official capacity, are covered by sovereign immunity," *id.* at 13.  Plaintiff counters that neither form of immunity applies, *see* Pl.'s Opp'n at 2–7, 15–18, and instead that the common-law right of access permits disclosure of the full Report in this instance, *id.* at 7–15, 18–20.  Each argument is addressed in turn.[3]

## A.     Speech or Debate Clause

Plaintiff's demand for disclosure of the Report is barred by the Speech or Debate Clause, which provides that "Senators and Representatives . . . for any Speech or Debate in either House . . . shall not be questioned in any other Place."  U.S. CONST., art. I, § 6, cl. 1.  This Clause creates "absolute immunity from civil suit."  *Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015) (citing *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502–03 (1975)).  The purpose of such immunity "is to protect the individual legislator, not simply for his own sake, but to preserve the independence and thereby the integrity of the legislative process."  *United States v. Brewster*, 408 U.S. 501, 524 (1972); *see also Eastland*, 421 U.S. at 502 ("The purpose of the Clause is to insure that the legislative function the Constitution allocates to Congress may be performed independently."); *Rangel*, 785 F.3d at 23 ("The Clause reflects the Founders' belief in legislative independence.").  As it safeguards legislative independence, the Clause also "'serves the additional function of reinforcing the separation of powers so deliberately established by the

---

[3]     Defendants also argue that plaintiff fails to state a claim, warranting dismissal under Federal Rule of Civil Procedure 12(b)(6), "for two reasons: (1) the common law right does not apply to documents of a House of Congress; and, even if it did, (2) the classified SSCI Report is not subject to compelled disclosure under the standards of [the common-law right of access] doctrine."  Defs.' Mem. at 20.  Except to the extent these arguments are intertwined with the jurisdictional analysis, *see infra* Part III.B.2(b)–(c), they need not be addressed since the complaint is dismissed for lack of subject-matter jurisdiction.  *See Al-Tamimi v. Adelson*, 916 F.3d 1, 7 (D.C. Cir. 2019) (finding that district court properly considered jurisdictional issue "before considering whether dismissal for failure to state a claim was appropriate under Fed. R. Civ. P. 12(b)(6)"); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)) ("'Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'").

Founders.'"  *Eastland*, 421 U.S. at 502 (quoting *United States v. Johnson*, 383 U.S. 169, 178 (1966)).

"Without exception," the Supreme Court "ha[s] read the Speech or Debate Clause broadly to effectuate its purposes."  *Eastland*, 421 U.S. at 501; *see also Judicial Watch, Inc. v. Schiff*, 998 F.3d 989, 991 (D.C. Cir. 2021).  Therefore, "although [the Clause] speaks of 'Speech or Debate,' it extends to protect all 'legislative acts.'"  *Id.* (quoting *Doe v. McMillan*, 412 U.S. 306, 312 (1973)).  When "it is determined that Members are acting within the 'legitimate legislative sphere[,]' the Speech or Debate Clause is an absolute bar to interference."  *Eastland*, 421 U.S. at 503 (quoting *McMillan*, 412 U.S. at 314)).

To be considered within the "legislative sphere" for purposes of the Clause, a given activity "must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House."  *Gravel v. United States*, 408 U.S. 606, 625 (1972).  Under this standard, "authorizing an investigation pursuant to which the subject materials were gathered" qualifies for protection, *McMillan*, 412 U.S. at 313, and as the Supreme Court has explained, that function is an "integral part of the legislative process," *Eastland*, 421 U.S. at 505.  The Clause also applies to a legislative act even when "a plaintiff alleges that [the act] violated the House Rules . . . or even the Constitution."  *Rangel*, 785 F.3d at 24 (citing *Kilbourn v. Thompson*, 103 U.S. 168, 203 (1880), and *McMillan*, 412 U.S. at 312–13).  "Such is the nature of absolute immunity, which is—in a word—absolute."  *Id.*  (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54–55 (1998).

As applied to the Report, the Speech or Debate Clause completely bars plaintiff's suit. "[T]he power to investigate is inherent in the power to make laws because 'a legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.'" *Eastland*, 421 U.S. at 504 (citing *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)). The Report, a product of a comprehensive Senate investigation, "is related to and in furtherance of a legitimate task of Congress"—to propose legislation based on accurate, well-researched, and complete information in an area of public interest. *Id.* at 505; *see, e.g.*, *McMillan*, 412 U.S. at 313 ("The acts of authorizing an investigation pursuant to which the subject materials were gathered, . . . preparing a report where [investigative materials] were reproduced, and authorizing the publication and distribution of that report were all integral parts of the deliberative and communicative processes" that define a legislative act). The Report not only summarizes the results of the investigation, but it also includes the recommendations and minority opinions of various Committee members, Report at 500–683, thereby representing the "collective expressions of opinion within the legislative process" that is "protected by the Speech or Debate Clause." *Hutchinson v. Proxmire*, 443 U.S. 111, 133 (1979). Although "there need be no predictable end result" of a congressional investigation or committee report for Speech or Debate immunity to apply, *see Eastland*, 421 U.S. at 509, defendants confirm that "the Senate enacted legislation containing limitations on interrogation techniques used upon detainees" within a year of the full Report's release to the Senate. Defs.' Reply Mem at 9 n.4, ECF No. 17 (citing National Defense Authorization Act for FY 2016, Pub. L. No. 114-92, § 1045, 129 Stat. 726, 977 (2015)). The Report is thus an act of Congress "done in a session . . . in relation to the business before it," and nothing about the Report removes the absolute bar to suit that the Speech or Debate Clause confers. *Gravel*, 408

U.S. at 624. *See also McMillan*, 412 U.S. at 312–13 (suit concerning House report on investigation into D.C. school system barred by Speech or Debate Clause).

Plaintiff's opposition to application of Speech or Debate immunity stems from the concurring opinion in *Judicial Watch*, 998 F.3d 989 (D.C. Cir. 2021). Relying on that concurrence, plaintiff argues that Speech or Debate Clause immunity does not apply in all circumstances and that the Court must perform a "fact-dependent inquiry" into whether the Clause applies here. Pl.'s Opp'n at 15–17; Pl.'s Reply Mem. at 2–3, ECF No. 20.[4] Plaintiff urges that the factual context of the Report places this suit outside of the Clause's immunity because, "[w]hile information about *how* the Committee wrote the report would arguably still be protected by the Speech or Debate Clause, the report *itself* would not" because it is a public record. Pl.'s Opp'n at 17 (emphasis in original). To the extent that the disaggregation plaintiff envisions is possible, plaintiff's argument is nonetheless unconvincing. The Court is bound by the law of the D.C. Circuit's majority opinion in *Judicial Watch*, which held that the Speech or Debate Clause provided absolute immunity against a suit seeking disclosure of subpoenas and responsive materials to those subpoenas brought pursuant to the common-law right of access. *Id.* at 992. That same reasoning and result applies here.[5]

---

[4]    Plaintiff further uses *Gravel v. United States* to support his argument that application of the Speech or Debate Clause turns on specific facts that must first go through the "*Gravel* filter." *See* Pl.'s Opp'n at 17. That comparison is misguided. The Supreme Court in *Gravel* held that the Clause did not protect U.S. Senator Gravel from liability because the act in question was not deliberative and thus "not part and parcel of the legislative process." *Gravel*, 408 U.S. at 626. That conclusion aligns with the absolute immunity the Speech or Debate Clause confers over acts conducted in the "legislative sphere." *Eastland*, 421 U.S. at 503; *see also Gravel*, 408 U.S. at 625. Thus, the "*Gravel* filter" to which plaintiff cites, is a fiction.

[5]    Plaintiff draws attention to an *amicus* filing in *ACLU v. CIA*—a FOIA case seeking disclosure of the Report from the CIA—that he argues shows SSCI's lack of "inten[t] to maintain control over" the Report as support for removing any Speech or Debate immunity here. Pl.'s Opp'n at 19. That argument is unfounded. The D.C. Circuit expressly rejected *amicus*'s argument in *ACLU v. CIA* and specifically held that SSCI "intended to control any and all of its work product, including the Full Report, emanating from its oversight investigation of the CIA." 823 F.3d at 665. The Circuit cited to then-SSCI Chair Feinstein's statements regarding the Report's release, explaining that, at the time of the Report's drafting, the Committee was yet to determine "if and when to publicly disseminate the Full Report." *Id.* at 667. Moreover, the Supreme Court in *Eastland* rejected a similar argument as "view[ing] the scope of the privilege too narrowly." 421 U.S. at 508. Specifically, the Court reasoned that "in determining the

Consequently, the Speech or Debate Clause bars this lawsuit because the Report at issue was an "integral part" of examining the CIA's detention and interrogation program, a "matter[] which the Constitution places within the jurisdiction of either House." *Gravel,* 408 U.S at 625.[6] This case must therefore be dismissed. *See, e.g.*, *Judicial Watch*, 998 F.3d at 993 (majority resolving case on Speech or Debate Clause grounds without addressing sovereign immunity or the *Larson-Dugan* exception).[7]

### B.      Sovereign Immunity

Defendants next argue that sovereign immunity bars plaintiff from bringing the instant suit against them.  Defs.' Mem. at 13–19.  The Supreme Court has stated that "[t]he general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (internal quotations and citations omitted).  For such suits, "[t]he basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983); *see also FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.") (citations omitted); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for

---

legitimacy of a congressional act we do not look to the motives alleged to have prompted it." *Id.*  At bottom, what matters for analyzing Speech or Debate immunity is whether the Report is "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings." *Gravel*, 408 U.S. at 625.  Intent to release those deliberative and communicative acts of the legislature to outside agencies or the public has no bearing on whether the Speech or Debate Clause bars suit.

[6]        Plaintiff separately requests disclosure of the full Report with redactions of classified information, Pl.'s Opp'n at 20, but because jurisdiction over this suit is lacking, plaintiff's separate argument is moot.

[7]        The parties strongly dispute whether the Speech or Debate Clause is dispositive, yet as Section III.B shows, consideration of plaintiff's alternative ground for relief under the *Larson-Dugan* theory does not salvage his claim.

jurisdiction."); *Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008) (quoting *Gray v. Bell*, 712 F.2d 490, 506 (D.C. Cir. 1983)) ("The United States is protected from unconsented suit under the ancient common law doctrine of sovereign immunity.").  Any "waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied."  *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted).

Sovereign immunity extends to Congress when "sued as a branch of the government," *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009), *abrogated on other grounds by Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020), and makes members of Congress "immune from liability for their actions within the legislative sphere," *id*.  As such, the doctrine of sovereign immunity generally bars suits brought against the Congress and its houses because of their "purely legislative activities."  *Shade v. Congress*, No. 13-5185, 2013 WL 5975978, at *1 (D.C. Cir. Oct. 15, 2013) (quoting *Brewster*, 408 U.S. at 512).  *See also Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007) (holding that sovereign immunity "forecloses . . . claims against the House of Representatives and Senate as institutions," and against members of both congressional houses "acting in their official capacities," since "an 'official capacity' suit is treated as a suit against a government entity" (quoting *Rockefeller v. Bingaman*, No. CIV-06-0198, 2006 WL 4061183, at *3 (D.N.M. Sept. 20, 2006) (citing *Keener v. Cong. of the U.S.*, 467 F.2d 952, 953 (5th Cir. 1972)))); *Cofield v. United States*, 64 F. Supp. 3d 206, 213–14 (D.D.C. 2014) ("[S]overeign immunity bars any claim for money damages against the United States (including the U.S. Senate) and its agencies.").

In the face of defendants' claim of sovereign immunity, plaintiff acknowledges that this suit against a Senate Committee and a Senator is for a report ordered by Senator Dianne Feinstein, then-Chair of SSCI.  Compl. ¶ 16.  Notwithstanding the official capacity in which the

requested Report was ordered, plaintiff contends that the so-called *Larson-Dugan* exception to sovereign immunity applies to permit this suit to go forward.  Pl.'s Opp'n at 2–7 (first citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682 (1949), then *Dugan*, and then *Wash. Legal Found. v. U.S. Sent'g Comm'n* ("*WLF II*"), 89 F.3d 897 (D.C. Cir. 1996)).  As the analysis that follows shows, even upon application of the *Larson-Dugan* exception to sovereign immunity, the disclosure of the requested records is not legally required.

### 1.    *Application of the* Larson-Dugan *Exception*

In *Larson v. Domestic & Foreign Commerce Corp.*, the plaintiff sued the head of the War Assets Administration, not for money damages, but for specific performance of the delivery of surplus coal in accordance with plaintiff's contract with the government, 337 U.S. at 684–85. Finding that the Administrator's action in refusing the coal shipment to the plaintiff was not unconstitutional or *ultra vires* conduct outside the scope of the Administrator's authority, nor contrary to statute or order, *id.* at 703, the Supreme Court concluded that the Administrator's action "was, therefore, inescapably the action of the United States and the effort to enjoin it must fail as an effort to enjoin the United States," *id.*; *see also id.* at 688 (noting suit would be barred "not because it is a suit against an officer of the Government, but because it is, in substance, a suit against the Government over which the court, in the absence of consent, has no jurisdiction").  The Court thereby clarified, and made explicit in *Dugan*, an exception to sovereign immunity in actions seeking specific relief for "(1) action by [government] officers beyond their statutory powers [or] (2) even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void." 372 U.S. at 621–22.  "In either of such cases the officer's action 'can be made the basis of a suit for specific relief against the officer as an individual.'"  *Id.* at 622 (quoting *Malone v. Bowdoin*, 369 U.S. 643, 647 (1962)); *see also Dalton v. Specter*, 511 U.S. 462, 472 (1994)) (quoting *Larson*, 337

U.S. at 691 n.11) (summarizing *Larson* as holding "that sovereign immunity would not shield an executive officer from suit if the officer acted either 'unconstitutionally *or* beyond his statutory powers'" (emphasis in original)); *Pollack v. Hogan*, 703 F.3d 117, 119–21 (D.C. Cir. 2012); *id.* at 120 (quoting *Larson,* 337 U.S. at 689, 693) ("Under [the *Larson-Dugan*] exception, 'suits for specific relief against officers of the sovereign' allegedly acting 'beyond statutory authority or unconstitutionally' are not barred by sovereign immunity.").

Defendants first consider each statute or legal doctrine on which plaintiff grounds his complaint—the general federal question provision, 28 U.S.C. § 1331, the mandamus statute, 28 U.S.C. § 1361, the Declaratory Judgment Act, 28 U.S.C. § 2201, the All Writs Act, 28 U.S.C. § 1651, and the common-law right of access—and proffer that none of these provisions waive sovereign immunity.  Defs.' Mem. at 14–16.  This argument is insufficient.  As *Judicial Watch, Inc. v. Schiff*, 474 F. Supp. 3d 305 (D.D.C. 2020), states regarding mandamus relief, defendants' argument "merely begs the question," *id.* at 312, because, if the *Larson-Dugan* exception does apply, "[n]o separate waiver of sovereign immunity is required to seek a writ of mandamus to compel an official to perform a duty required in his official capacity," *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005); *see also WLF II*, 89 F.3d at 901 (citing *Chamber of Cong. of U.S. v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996)) ("If a plaintiff seeks a writ of mandamus to force a public official to perform a duty imposed upon him in his official capacity, however, no separate waiver of sovereign immunity is needed.").  Plus, the existence of the common-law right of access inherently waives sovereign immunity where it applies.  *See Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) (holding that "sovereign immunity does not act as a bar to our exercising jurisdiction" since *Larson-Dugan* exception applies "and hence no waiver of sovereign immunity is required here").

13

Aside from the waiver argument, defendants contend that the *Larson-Dugan* exception is inapplicable because plaintiff presents no claim that the challenged action of either of the Senate defendants was unconstitutional, *ultra vires*, or beyond statutory authority.  Defs.' Mem. at 16–19.  As was the case in *Judicial Watch*, no allegation is made—and no evidence suggests—that SSCI or its chairman acted *ultra vires* or in a manner contrary to the Constitution or a statute in commissioning the Report, investigating the CIA's program, or disseminating the Report to select entities.  To the contrary, as defendants note, the Senate established SSCI "to oversee and make continuing studies of the intelligence activities and programs of the United States Government, and to submit to the Senate appropriate proposals for legislation and report to the Senate concerning such intelligence activities and programs."  *Id.* at 3 (citing S. Res. 400 at 125, 94th Cong., 2d Sess. (1976)).  Additionally, Senate Resolution 400 expressly authorizes the Committee's classification of the Report and "specifies the mechanism for SSCI to disclose information publicly, including intricate procedures for SSCI to seek to disclose classified information."  *Id.* at 4 (citing S. Res. 400 § 8).

Defendants' added argument that the *Larson-Dugan* exception is inapplicable because "plaintiff does not allege that the defendants have acted 'beyond statutory authority,'" Defs.' Mem. at 17, topples in the face of binding D.C. Circuit precedent.  In *WLF II*, plaintiffs sought, pursuant to the common-law right of public access to government records, disclosure of documents "compiled or created by an advisory committee established by the United States Sentencing Commission," 89 F.3d at 898–99.  In the Circuit's analysis, the relevant "duty" owed by the defendants in the case stemmed from the common-law right itself, not a separate statute or regulation.  *Id.* at 901.  Whether the *Larson-Dugan* exception to sovereign immunity applies

"depends upon whether the Government has a duty to the plaintiff, *viz.* to allow it access to certain government records." *Id.* [8]

As a result, applicability of the exception turns first on the existence of the duty, and the application of sovereign immunity merges with the claimed duty to disclose asserted in the Complaint. The D.C. Circuit explained: "the question of jurisdiction merges with the question on the merits," triggering an assessment of the validity of plaintiff's claim under the common-law right of access. *Id.* at 902. *See also Swan*, 100 F.3d at 981 (determining whether "the *Larson-Dugan* exception would be triggered and hence no waiver of sovereign immunity is required" rested on "discussion of the central merits question in the case, namely whether" challenged government action violated statute); *Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031–32 (9th Cir. 2013); *id.* at 1032 (quoting *WLF II*, 89 F.3d at 901–02) (following D.C. Circuit's practice when finding that "the question of '[w]hether the *Larson-Dugan* exception' applied 'merge[d] with the question on the merits,'" and therefore turning "to address the substantive merits of the mandamus claim before it'" (alterations in original)); *accord Int'l Fed'n. of Prof'l & Tech. Eng'rs v. United States*, 934 F. Supp. 2d 816, 821–22 (D. Md. 2013) (applying *Larson-Dugan* exception to avoid sovereign immunity bar and reach merits of suit by union and employees of legislative branch entities against Secretary of the United States Senate and

---

[8]     The D.C. Circuit's expansion of the *Larson-Dugan* doctrine to allow claims akin to those brought against federal agencies, under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of records from other federal government components, pursuant to the common-law right of public access, significantly broadens this exception to sovereign immunity beyond the parameters articulated by the Supreme Court and, at first blush, is not easily reconciled with Supreme Court jurisprudence that waivers of sovereign immunity must be expressly set out by statute. *See, e.g.*, *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2253–54 (2021) (referring to "this Court's precedents holding that Congress cannot abrogate state sovereign immunity in the absence of an 'unmistakably clear' statement" (quoting *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 786 (1991)); *United States v. Bormes*, 568 U.S. 6, 9 (2012) ("Sovereign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'" (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992) (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95 (1990))) (internal quotation marks omitted)). Nonetheless, the Court is bound by D.C. Circuit authority, which demands this analysis.

Sergeant at Arms of the Senate in their official capacities, claiming parts of the Stop Trading on Congressional Knowledge Act were unconstitutional); *Ctr. for Arms Control & Non-Proliferation v. Lago*, No. 05-682 (RMC), 2006 WL 3328257, at *4–*6 (D.D.C. Nov. 15, 2006) (in suit for disclosure of materials used by defunct presidential commission in developing a report to the President, finding that sovereign immunity defense was "auxiliary to the ultimate question on the merits" as to whether the commission owed duty of disclosure under sunshine provisions of Federal Advisory Committee Act and therefore addressing the merits).

Accordingly, the merits of plaintiff's request for disclosure of the classified Report under the common-law right of access must be considered to assess whether sovereign immunity bars this lawsuit against defendants.[9]

### 2.    *No Common-Law Right of Access to Requested Records*

The Supreme Court has made "clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978) (footnote omitted).  This right of access is "not absolute," *id*. at 598, but "left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case," *id*. at 599; *see SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013) ("Of course, even if a document is a record of the type subject to the common law right of access, the right is not absolute: it is defeated when the government's interest in secrecy outweighs the public's interest

---

[9]    Defendants invoke *Maynard v. Architect of the Capitol*, 544 F. Supp. 3d 64 (D.D.C. 2021), as further support that the *Larson-Dugan* exception to sovereign immunity does not apply for lack of a statutory duty. *See* Defs.' Mem. at 18.  *Maynard* is of no help to defendants.  As plaintiff notes, *see* Pl.'s Opp'n at 5, the *Maynard* court concluded that the *Larson-Dugan* exception was inapplicable because the "duty" that plaintiff there identified arose from assurances made in the defendant's human resources manual, which did not comply with the exception's requirement that the duty to act arises from a statute.  *See Maynard*, 544 F. Supp. 3d at 81; *see also Larson*, 337 U.S. at 689; *Dugan*, 372 U.S. at 621–22.  In comparison, the duty here arises from the common-law right of public access, which was not at issue in *Maynard*, and so that case does not alter this holding.

in disclosure.").  Binding precedent in this Circuit ensures that "the common law right of access extends beyond judicial records to the 'public records' of all three branches of government." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 936 (D.C. Cir. 2003) (citing *WLF II*, 89 F.3d at 903–04); *see also Schwartz v. U.S. Dep't of Justice*, 435 F. Supp. 1203, 1204 (D.D.C. 1977) (holding "that Congress is subject to the common law rule which guarantees the public a right to inspect and copy public records" and explaining that even though "Congress has exempted itself from the requirements of the Freedom of Information Act, 5 U.S.C. § 552, by 5 U.S.C. § 551(1)(A)[,] [t]hat Act, however, is not coextensive with the common law rule").

### *(a) Two-Part Test for Application of Common-Law Right of Public Access*

The D.C. Circuit has outlined a two-step process for determining whether the common-law right of access applies.  *See Wash. Legal Found. v. U.S. Sent'g Comm'n* ("*WLF I*"), 17 F.3d 1446, 1451–52 (D.C. Cir. 1994).  First, a court must decide "whether the document sought is a 'public record,'" *id.* at 1451, and, if it is, then, second, "the court should proceed to balance the government's interest in keeping the document secret against the public's interest in disclosure," *id.* at 1451–52; *see also WLF II*, 89 F.3d at 899 (summarizing prior holding).  As to the first prong, under "federal common law," a "public record" subject to the public right of access "is a government document created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived."  *WLF II*, 89 F.3d at 905; *see also Am. Int'l Grp.*, 712 F.3d at 3 (same).  In applying the second prong of this test, courts "should focus on the specific nature of the governmental and public interests as they relate to the document itself," rather than engaging in "an abstract inquiry."  *WLF I*, 17 F.3d at 1452.[10]

---

[10]     In *WLF I*, the D.C. Circuit found that the "district court erred" by concluding categorically that the common-law right did not apply "without knowing" precisely which documents were at issue, and thus instructed

The Report does not satisfy this two-part public access test.

### (b)  *The SSCI Report Is Not a Public Record*

The requested Report issued by SSCI is indisputably an official action of the Committee, but not every ministerial or preliminary step to gather information by a government entity amounts to creation of a "public record."  In fashioning the definition of "public records" subject to the common law right of public access, the D.C. Circuit articulated two guideposts: "adequately protect[ing] the public's interest in keeping a watchful eye on the workings of public agencies—an interest we regard as fundamental to a democratic state," *WLF II*, 89 F.3d at 905 (internal quotations and citations omitted), and "yet narrow enough to avoid the necessity for judicial application of the second-step balancing test to documents that are preliminary, advisory, or, for one reason or another, do not eventuate in any official action or decision being taken," *id*. As examples of the latter "not encompass[ed]" by the definition, the Circuit cited "the preliminary materials upon which an official relied in making a decision or other writings incidental to the decision itself—for example, the report of a blood test provided in support of an application for a marriage license, the job application of a would-be government employee, a government auditor's preliminary notes used in the preparation of an official report, or a cover memorandum circulated with a copy of an official report or study." *Id.* at 905–06.

The Report was such a preliminary and advisory step to gather information pertinent to the Committee's task of "oversee[ing] and mak[ing] continuing studies of the intelligence activities and programs of the United States Government" in an effort to submit "appropriate proposals for legislation" to the Senate.  Defs.' Mem. at 3.  It thus does not qualify as a public

---

that "the court should have analyzed each category of document requested."  *WLF I*, 17 F.3d at 1452.  Here, by contrast, the requested classified SSCI Report is identified plainly.  Compl. ¶ 16; Pl.'s Opp'n at 1.

record subject to the common-law right of public access.[11]   In comparison, in the analogous case

of *Pentagen Technologies International, Ltd. v. Committee on Appropriations of the United

States House of Representatives* ("*Pentagen Technologies*"), 20 F. Supp. 2d 41 (D.D.C. 1998),

*aff'd*, 194 F.3d 174 (D.C. Cir. 1999), a private company and individual sued, under the common-

law right of public access, for disclosure of investigative reports prepared by staff of the

defendant Committee on Appropriations of the U.S. House of Representatives, *id.* at 43.   The

*Pentagen Technologies* court declined to compel disclosure, finding that the investigative reports

at issue were "'preliminary materials' that do not fall within the definition of 'public records'

employed by this Circuit," because "the reports are 'investigative' in nature" and do not

"memorialize or record any official action taken by the Committee."  *Id*. at 45.  This finding led

to the conclusion that "[t]here thus exists no common law right of access to the reports, and the

Court need not apply the second-step balancing test of *WLF I* to the reports."  *Id*.

SSCI commissioned the Report as part of its investigative effort to examine and advise

the CIA's detention and interrogation program in the aftermath of the terrorist attacks on

September 11th.  Though undeniably a form of Committee action, the Report was preliminary to

any final recommendation or proposed legislation such that this action lacks the legal

significance to constitute a "public record" to which the right of public access attaches.  *See WLF

II*, 89 F.3d at 906 (concluding that requested documents of the Advisory Group to U.S.

Sentencing Commission were "made up entirely of materials that are, if not preliminary, then

merely incidental to the only official action the Advisory Group was authorized to take, *viz*.,

---

[11]       Contrary to plaintiff's view, *McMillan*, *Gravel*, and *Hutchinson* are all on point.  As discussed, the Report is integral to the deliberative and communicative role of the Committee and its Members in legislating, and so, like the committee reports at issue in the aforementioned cases, the Report is within the legislative sphere and plaintiff cannot compel its disclosure because of the Speech or Debate Clause.  Nowhere in *McMillan*, *Gravel*, or *Hutchinson* was a Speech or Debate distinction made for committee reports documenting objectionable statements, as plaintiff suggests.  *See* Pl.'s Opp'n at 16.

recommending sentencing guidelines to the Commission," and did not qualify as "public records").

### (c)     The Government's Interest in Secrecy Outweighs the Public's Interest in Disclosure

For good measure, the requested disclosure of the Report also fails the second part of the test for public access, which requires "balanc[ing] the government's interest in keeping the document secret against the public's interest in disclosure." *WLF II*, 89 F.3d at 903. The D.C. Circuit has made clear that "the government has a compelling interest in protecting the secrecy of information important to our national security" and that the "need to guard against risks to national security interests overcomes a common-law claim for access." *Dhiab v. Trump*, 852 F.3d 1087, 1098 (D.C. Cir. 2017) (internal quotations and citations omitted); *see also Am. Int'l Grp.*, 712 F.3d at 3 ("Of course, even if a document is a record of the type subject to the common law right of access, the right is not absolute: it is defeated when the government's interest in secrecy outweighs the public's interest in disclosure.").

As plaintiff acknowledges, *see* Pl.'s Mem. at 20, the Report contains highly classified information about the CIA's detention and interrogation policies and procedures that would compromise national security if released, far outweighing the public's interest in disclosure. Plaintiff also unpersuasively argues that the already-disclosed 500 pages of the Report are insufficient to bolster the public's interest in reviewing more.

Consequently, disclosure of this Report under the common-law right of access is not required.[12]

---

[12]     The Court's lack of subject-matter jurisdiction over this suit also bars plaintiff's request for limited discovery in lieu of dismissal. *See* Pl.'s Opp'n at 21–22.

**IV.     CONCLUSION**

For the reasons set forth above, plaintiff has no right to demand disclosure of the Report ordered by the SSCI for lack of subject-matter jurisdiction.  This case is therefore dismissed.

An Order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  September 15, 2022

_____
BERYL A. HOWELL
Chief Judge